OPINION OF THE COURT
Lewis R. Friedman, J.
This case raises the question of how much child support should be paid when there is "shared” or "joint physical” custody. A review of the New York decisions on the subject reveals that their stated analyses neither answer the question nor provide any guidance. This opinion, therefore, seeks to discern whether there is a rule which should be applied to *750 joint physical custody cases. The court concludes that the application of the Child Support Standards Act percentages is inappropriate in cases of shared physical custody.
These parties were married in September 1986. Their child, Morton Elizabeth, was born March 15, 1989. The parties separated in July 1990. In February 1992, the custody and visitation issues were resolved by stipulation before a Justice of the court. The parties agreed that they would have joint custodial decision making. There was also a "shared time allocation.” Plaintiff (Father) is to have his daughter with him from Wednesday evening to Sunday evening during alternate weeks and from Wednesday evening to Thursday morning during the other week. There is no preset schedule for vacations; the parties deal with that issue on an ad hoc basis.
The threshold question is whether the Child Support Standards Act (CSSA; Domestic Relations Law § 240 [1-b])* applies to cases of joint physical custody. The language of the CSSA would lead to a conclusion that it does not apply. The substantive provisions of the statute that governs support uses the terms "custodial parent” and "non-custodial parent”. It is clear from a linguistic and structural analysis that the CSSA does not address a joint custody situation, involving a sharing of physical custody of the child or children, where there is no designated "custodial parent” (see, 1 Tippins, New York Matrimonial Law & Practice, § 5A:57, at 110-111). If there is no "custodial parent” to receive payments there is also no "noncustodial parent” to make the payments. The concept of shared parenting time simply does not appear anywhere in the statute. Despite the statutory language the Third Department has consistently held that the CSSA applies to joint custodial arrangements (Nicholas v Cirelli, 209 AD2d 840 [3d Dept 1994]; Matter of Holmes v Holmes, 184 AD2d 185 [3d Dept 1992]; cf., Matter of Kerr v Bell, 178 AD2d 1, 3 [3d Dept 1992]; Matter of Smith v Smith, 197 AD2d 830 [3d Dept 1993]).
Matter of Kerr v Bell (supra) appears to be the seminal authority on the subject. That case actually dealt with a "split custody” arrangement, where one parent had custody of four children and the other had custody of one child; it was not a "shared” custody case. The Court noted that both parents were "simultaneously” "custodial and non-custodial” parents. The Court, therefore, concluded, without extended discussion, that *751 it would not hold the CSSA inapplicable. In Matter of Holmes v Holmes (supra), a shared custody case, the mother had physical custody of the children 60% of the time. The majority of the Third Department would not designate her the "primary custodian” rather the Court found the parents to be both custodial and noncustodial simultaneously. The Third Department majority relied on Matter of Kerr v Bell and again refused to conclude that the CSSA should not apply. The two-Justice dissent noted that in joint, or "shared”, custody the designation of "custodial parent” shifts with the child’s location. Therefore the dissent would look for the parent who had the majority of custodial time and designate that parent as the "custodial” parent for the purposes of the support statute. In both Holmes and Kerr the matter was remanded for further calculations. In Kerr the Court required the fact finder to look at each individual household rather than apportioning one fifth of the CSSA amount to one child. That of course followed from the parties’ split custody arrangement (see, Riseley v Riseley, 208 AD2d 132 [3d Dept 1995] [applying the CSSA percentages to each household in a split custody case]). In Holmes the Appellate Division offered no guidance on how the CSSA should apply (see, Florescue, Allegations of Waste, NYLJ, May 10, 1993, at 3, col 1).
The other Departments have not spoken directly on the issue. (Cf., Harmon v Harmon, 173 AD2d 98, 110 [1st Dept 1992]; Matter of Isaac v Clay, 202 AD2d 1047 [4th Dept 1994].) The reported cases offer little guidance. In Harmon, a "joint custody” case, the First Department did not discuss the theoretical problems by the application of the CSSA; the Court merely noted that the mother was "primary caretaker and de facto custodian of the children.” It is interesting, but not informative, that without any description of the time-sharing arrangement, other than to note that the child "resides” with the mother, the Third Department in Nicholas v Cirelli (supra) found the mother to be "the primary caretaker and de facto custodian” since there was no "actual shared or split physical custody of a child” (209 AD2d, at 840-841). The Fourth Department shed little light on the subject when it held that child support was not due to the parent with the substantially greater income because "both parties have extensive custodial rights under the stipulated joint custody order” (Matter of Isaac v Clay, supra). In Harrington v Harrington (NYLJ, July 18, 1991, at 27, col 3 [Sup Ct, Westchester County] [Colabella, J.]) the court awarded joint custody but awarded child support *752 to the mother as the "primary caretaker” relying on Matter of Kester v Kester (151 AD2d 815 [3d Dept 1989]), a pre-CSSA case. In Sally R. v Stewart R. (151 Misc 2d 307, 309 [Fam Ct, Dutchess County 1991]) the court criticized the application of the CSSA to a joint shared custody situation where the mother had "primary physical custody” and apportioned reduced child support based on the needs of the children and the proportion of needs provided by each parent. In Roy v Roy (188 AD2d 274 [1st Dept 1992]) the First Department in a split custody case rejected the application of the child support percentage of the CSSA and found the statutory formula "unjust and inappropriate”.
The legislative history provides little guidance. The shared custodial situation was discussed at the Federal level when the Family Court Support Act of 1988 (Pub L 100-485, 102 US Stat 2343), which mandated the CSSA, was adopted (see, e.g., US Dept of Health & Human Services Office of Child Support Enforcement, Development of Guidelines for Child Support Orders [Sept. 1987]). There was apparently no discussion of the issue at the State level.
"Joint custody” is a concept that developed in the 1980’s in response to pressure from father’s rights groups. In 1978 three States authorized joint custody (see, Roman & Haddad, The Disposable Parent [1978]), while by 1991 all but eight States provided for joint custody by statute and the other eight by case law (Joint Custody Statutes and Judicial Interpretations [App A], Joint Custody and Shared Parenting, at 297-331 [Folberg, 2d ed 1991]). The meaning of "joint custody” varies from State to State. For example, California, which preferred joint custody in all cases, had a statutory definition: " 'joint custody’ means joint physical custody and joint legal custody” (Cal Civ Code § 4600.5 [d] [1] [repealed Stat 1992, ch 162]). In New York the term "joint custody” generally is used to refer only to joint legal custody, or joint decision making (see, e.g., Braiman v Braiman, 44 NY2d 584, 589-590 [1978]; Matter of Venable v Venable, 122 AD2d 374 [3d Dept 1986]; Voelker v Keptner, 156 AD2d 1014 [4th Dept 1989]). It is not the purpose of this decision to make the policy decision that results from the debate about joint custody. Some scholars find joint custody either to be harmful to women’s interests or supportive of them (see, e.g., Bartlett, Gender & Law Theory Doctrine, Commentary, at 372-377 [1993]; Stark, Divorce Law, Feminism, And Psychoanalysis: In Dreams Begin Responsibilities, 38 UCLA L Rev 1483, 1525 [1991]) and others wonder whether joint custody *753 properly takes the best interest of children into consideration (see, e.g., Brotsky, Steinman & Zemmelman, Joint Custody through Mediation: A Longitudinal Assessment of the Children, in Joint Custody & Shared Parenting, 26 Conciliation Ct Rev 53, 167 [1988]; Maccoby, Depner & Mnookin, Co-Parenting in the Second Year After Divorce, in Joint Custody & Shared Parenting, 52 Marriage & Fam, at 132, 151; Singer & Reynolds, A Dissent on Joint Custody, 47 Md L Rev 497, 506-507 [1988]). Suffice it to note that the scholarly debate shows, as the Court of Appeals noted in Braiman (44 NY2d, at 589), that there is substantial dispute about the "wisdom of joint custody”. The question before this court is to interpret the New York support statute in a fashion that makes sense of a situation not considered by its drafters.
It is clear to this court that in New York the mere designation of the parents as "joint custodians” should not affect the outcome of the case. There is obviously no reason why the sharing of legal decision making should have any impact on the need for or amount of child support. Also as noted above even the courts which apply the CSSA to shared custody do not have any theoretical concerns when there is a clearly designated "primary physical custodian” (e.g., Nicholas v Cirelli, supra; Matter of Karen G. v Leroy G., NYLJ, Sept. 15, 1992, at 24, col 6 [Fam Ct, Queens County] [Cozier, J.]), or where the court can readily discern which parent is the de facto custodial parent (Harmon v Harmon, supra). The reality of the situation governs. When it comes to "joint custody” "the court must not be misled by nomenclature” (Reichler, NY Civ Prac: Matrimonial Actions [Matthew Bender 1993]).
Pursuant to Federal mandate every State has adopted child support standards. Yet, the child support statutes of the States show substantial variation in their application to shared custody. Some States have adopted a formula to reduce child support by the time the child spends with the "non-custodial” parent once a certain threshold is reached. For example in Colorado the threshold is 92 overnights (Colo Rev Stat at § 14-10-115 [8]). Once that 25% threshold is reached there is a pro rata reduction in support by the amount of time spent with the "non-custodial” parent (Colorado Child Support Guideline, in Rutkin, Fam Law & Prac, 22A-19 [1993]). In California under the current statute there is a complex formula in which the percentage of visitation with each parent is a factor in the amount of support in all cases (Cal Civ Code § 4055). Some States have no mechanical formulation but allow adjustments *754 to the support standard amount based on the spending of "substantial amount of the time” with the other parent (e.g., Fla Stat Annot § 61.30 [11] [g]), although in Florida consecutive visitation in excess of 28 days may give rise to a temporary reduction in child support not to exceed 50% (Fla Stat Annot § 61.30 [11] [g]). In yet other States, such as Massachusetts (Child Support Guidelines, Part II-D [1]), the guidelines stated that they "are not applicable” to shared custody. That is, "extraordinary visitation” does not impact the support award (see, Wolfson & Cohen, Child Support: Finding a Fair Solution, Complete Lawyer 43, 45 [Winter 1995]).
Each of the formulas used by the other States have infirmities. One of the problems with a "threshold” is that small differences in "visitation” may result in vast differences in support. For example, where there is a 25% threshold, an increase of 10%, in visitation from 20% to 30%, may well result in a 45% reduction in support (Getman, Changing Formulas For Changing Families: Shared Custody Must Not Shortchange Children, 10 Fam Advoc 47, 49, 54 [Spring 1988]). One commentator has noted that the complex calculations required by pro rata reductions do not produce an equitable result and are not "fundamentally fair” (Florescue, CSSA Statutes and Their Effect on Practice, NYLJ, May 11, 1992, at 2, col 6).
A pro rata reduction based on visitation time is not necessarily related to a reduction in the costs of support. The formulas often do not take into consideration the generally accepted fact that shared custody does not reduce the costs in either household but actually increases the total child-related costs that must be borne by both parents. That is, there is no statutory recognition that shared custody necessitates duplication of costs such as housing and clothing and increases the need for transportation expense so that the total required to be expended for the children is generally in excess of the CSSA mandated percentage of the joint income. These increased costs has led one researcher to conclude that joint custody is workable for parties with joint income "in the upper-middle income brackets” but is "out of range for couples with modest income” (Reichler, New York Child Support Manual, at 35-3, 35-7 [1993]). For that reason States such as Colorado increase the basic child support computed under the regular percentage formula by an additional 50% to reflect the increased total costs caused by duplication, before applying the percentage reduction for time in excess of 92 overnights (Colo Rev Stat § 14-10-115 [10] [c]).
*755 New York has no similar adjustment built into its CSSA. Although an addition to the total support is clearly appropriate and necessary, the determination of the amount to be added to the basic child support determined through the CSSA guidelines is clearly a matter for legislative determination. This court cannot under the guise of "interpretation” of a statute which is silent conclude either that an "add on” to child support is appropriate or determine its amount. That type of judicial legislation would not resolve an ambiguity in the statute. Although this is a case "where neither the statutory text nor the 'legislative will’ provides a single clear answer” (Kaye, State Courts at the Dawn of a New Century: Common Law Courts Reading Statutes and Constitutions, 70 NYU L Rev 1, 33-34 [1995]), the court cannot provide an answer. Here the Legislature did not consider the issue and left a statute that cannot be recrafted by the court. There is simply no matter for judicial resolution.
Father here argues that the court should apportion the statutory child support by the amount of time he spends with the child. But that approach, of necessity, produces a result that is unjust and inappropriate. If either parent is treated as the primary custodial and a pro rata reduction is applied to support, without consideration of the factors that affect actual costs, the parent receiving support will not be receiving the child support which the Legislature determined to be required. On the other hand this court cannot rationally apply the CSSA basic support percentage to Father’s income and require that amount to be paid to Mother, since no doubt, Father incurs substantial expenses during his parenting time. Also the court cannot merely reduce the support to Mother by the percentage of time Father spends with the child. Indeed even a mechanical reduction in support is far from simple. The calculation of the percentage of time spent by each party is not simple. The parties cannot agree on the computation of the percentage of the time husband is allocated. Father counts Sundays as a "day” for him. He concludes that he has 42.9 % of the days. Mother, counting overnights only, allocates 36% of the year to Father. Both computations ignore the time spent during vacations. Without doubt, Father’s time with Morton is greater than the "traditional” arrangement of a Wednesday visit and alternate weekends, which works out either to 28.4% or 14.2% of the time depending on whether Wednesday is a sleepover. Also, that does not factor in vacation. The Third Department in Holmes (184 AD2d 185, supra) seems to have used a computa *756 tion based on overnights. Many other States’ statutes use overnights as an objective measurement.
However, a reduction based on overnights could not be confined solely to shared physical custody cases. Since there would have to be a court determination of whether there was "mere visitation” or "shared physical custody”, the issues would probably be litigated in many simple "visitation” cases. Unnecessary trials, which greatly disrupt all members of the involved family would ensue. A monied spouse would not settle for visitation without overnights since that would affect support payments. The other spouse would probably not agree to "give up” the overnights and the support money. Thus determinations of the best interest of the children would be forced to unnecessary hearings. The "threshold” issue would always appear since the court would have to differentiate "true shared custody” from mere expanded visitation. As suggested by the numerical analysis above, a figure well in the vicinity of 35% would be necessary to prevent "routine” cases from triggering a support reduction.
In the vast majority of States, including New York, the "income shares” model of child support was adopted as the theoretical underpinning of the CSSA. That is, child support is determined by the sharing of total support based on the income of each of the parties. Yet the application of a proportional offset reduction, even at a 35% threshold, is clearly unjust and inappropriate. The income shares model uses a proportional offset method (see, US Dept Health & Human Service Office of Child Support Enforcement, Development of Guidelines for Child Support Orders II-67 [Sept. 1987]). Under that model support is first computed by application of the guidelines to both parents’ income; then those amounts are multiplied by the time the child spends in the other parent’s house; then the amounts are offset against each other. It was that formula that the Family Court applied in Matter of Isaac (Clay) (NYLJ, May 23, 1995, at 31, col 5 [Fam Ct, Monroe County]). A simple example shows the strange results. If the parents of one child, in a traditional custodial /noncustodial situation, earn, after statutory deductions, $30,000 and $50,000, the noncustodial spouse would owe $8,500 in direct child support. Using the proportional offset method results in reducing that amount by 64%, to $3,060, if the "visitation” is 40%. Even a simple pro rata reduction of support by 40% reduces support by $3,400, to $5,100, with no showing that the costs of the spouse with the greater custodial time have been reduced.
*757 The simple conclusion is that the child support percentages in the CSSA make no sense if "adjusted” for extensive "visitation”. This court does not conclude that the Legislature intended the court to apply the support percentages blindly. Rather, where there is extensive time sharing the court must look at the totality of the circumstances in both homes rather than rely on the percentages. The decision to view the totality of the circumstances, or the "factors” in Domestic Relations Law § 240 (1-b) (f) (1)-(10) is not inconsistent with the cases. In Holmes v Holmes (supra), the majority found the CSSA to apply to shared custody but seemed to suggest that the Hearing Examiner correctly refused to adjust for time sharing. On the other hand the dissent concluded that the CSSA did not apply because one parent can always be designated as the primary custodian. The dissent would then use the "factors” to reduce child support.
Thus, while this court concludes that while the CSSA "applies” to shared custody, it holds that the basic support percentages should not be used in any shared custody case. The threshold for true shared custody varies by State from 25% to 35%; the maximum figure used appears to be 35% of the overnights. This case meets that standard under Mother’s or Father’s computation.
Based on the proof at trial Father earned $76,876 and Mother $83,118. Father’s efforts to attribute Mother’s parents’ gifts to her as additional income is rejected as not supported by the evidence. It appears that Father earns 48% of the total income of the parties. The court’s decision to analyze the "factors” precludes any extensive discussion of Matter of Cassano v Cassano (85 NY2d 649 [1995]), with respect to the application of the percentages to total income earned in excess of $80,000.
The analysis of the "factors” in Domestic Relations Law § 240 (1-b) (f) yields the following results. The child has no resources other than those of her parents; the parents have no substantial assets. Morton has no "special needs”. The child would have lived in a substantial upper middle income family if the household were not being dissolved. There are no tax consequences of the payment of child support. Both parents would make substantial nonmonetary contributions to the care and well-being of the child during the time she is with each of them. Both parents spend substantial time with Morton, but she spends a great deal of time with a nanny who travels from house to house with her. Both parents are attorneys and have no educational needs. As noted the income of the parties is *758 roughly equivalent. The expenses Father incurs "in exercising visitation” are not "extraordinary.” Nor does the parties’ agreement discuss "extended visitation.” There are however expenses for "routine and essential services” which have traditionally been excluded from consideration under Domestic Relations Law § 240 (1-b) (f) (9) (see, Matter of Pandozy v Gaudette, 192 AD2d 779, 780 [3d Dept 1993]; Matter of Deborah D. v Theodore G., 149 Misc 2d 299, 304 [Fam Ct, Columbia County 1990] [Peters, J.]). In a shared custody case it is, however, reasonable and appropriate to consider the expenses of the child incurred by each of the parties as one of the "any other factors” referred to in Domestic Relations Law § 240 (1-b) (f) (10), in order to find a number that is just and appropriate. Thus, for example, the court is aware that Father purchased a two bedroom apartment which is larger than his own needs warrant so as to provide space for Morton and her clothing. The court has considered the net worth statements of the parties, which reflect their expenses for Morton, as well as the testimony at the trial. Based on the totality of other circumstances the court fixes the child support to be paid by Father to Mother at $750 per month. Further Father is to bear 48% of costs of child care and 48% of the private school and health care costs for Morton.

 The Domestic Relations Law section is identical to Family Court Act § 413. Cases interpreting the statutes are therefore interchangeable.