Susan Letner (Beaber) PHILLIPS,
Petitioner,

v.

Daniel Edward BEABER, Respondent.

No. 98–0808.

Supreme Court of Texas.

Argued April 6, 1999.

Decided June 3, 1999.

Daniel Lemkuil, Houston, for petitioner.

Logene L. Foster, Sugar Land, for respondent.

Justice O'NEILL delivered the opinion for a unanimous Court.

A court that renders a final order in a suit affecting the parent-child relationship generally retains continuing, exclusive jurisdiction to modify the order. TEX. FAM. CODE §§ 155.001(a), 155.003(a). This jurisdiction may be exercised to modify visitation, which is defined as "possession of and access to a child," TEX. FAM.CODE § 152.002(11), but not to modify "custody" if the child and the custodial parent have established another home state, as in the present case. TEX. FAM.CODE § 152.003(c) & (d). We must decide whether a parent's motion to modify, which seeks to obtain primary possession and the right to establish the child's residence, implicates visitation or custody. The court of appeals held that the motion concerns only visitation, and reversed the trial court's dismissal order. 971 S.W.2d 127, 129–30. We hold that the rights sought to be modified concern more than mere visitation and are inherently custodial. Consequently, we reverse the court of appeals' judgment and reinstate the trial court's dismissal order.

Daniel and Susan Beaber divorced in Fort Bend County in 1991, and were named joint managing conservators of their only child. The divorce decree granted Susan "primary custody and control of the child" and the sole legal right to determine the child's residence. Daniel was granted possession "at all times as the parties may mutually agree," or on alternating weekends, certain holidays, and for eight weeks during the summer.

The divorce decree was modified by agreement in 1996 after Susan and the child moved to Colorado, primarily to address changes in Daniel's visitation rights and travel logistics necessitated by the move. Under the modified order, Susan retained primary custody and the right to determine the child's residence.

In 1997, Daniel filed a motion to modify the agreed order asking the court to award him primary possession and the right to establish the child's residence, and to grant Susan access rights under a standard possession order. Susan challenged the court's jurisdiction under section 152.003(d) of the Family Code, which prohibits a court from exercising jurisdiction to modify custody if the child and the custodial parent have established a new home state. The trial court granted Susan's plea to the jurisdiction and dismissed Daniel's motion. The court of appeals held that this was error because Daniel's motion sought to modify "possession of or access to the child," which was within the trial court's continuing jurisdiction, rather than "custody," which was not. 971 S.W.2d at 129. We disagree.

A trial court generally retains continuing, exclusive jurisdiction to modify its final order in a suit affecting the parent-child relationship. *See* TEX. FAM.CODE §§ 155.001(a), 155.003(a); *Curtis v. Gibbs,* 511 S.W.2d 263, 266 (Tex.1974). Under the Family Code and Texas's Uniform Child Custody Jurisdiction Act (UCCJA), however, "a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state," unless the action was filed before the new home state was acquired or all parties acquiesce in writing. *See* TEX. FAM.CODE § 152.003(d). Section 155.003(b) similarly provides that a court may not exercise its continuing jurisdiction to modify managing conservatorship if the child has acquired a new home state or if modification is precluded by Chapter 152 of the Family Code, the UCCJA. The Legislature amended section 155.003 "to include UCCJA provisions" as part of the same legislation adopting the UCCJA. *See* SENATE JUDICIARY COMM., BILL ANALYSIS, Tex. S.B. 439, 68th Leg., R.S. (1983). Because section 155.003 incorporates the specific restrictions upon modification jurisdiction imposed by section 152.003(d), and because Susan's plea to the trial court's jurisdiction rested on section 152.003(d), we focus our analysis on that section.

Texas's version of the UCCJA defines "custody" as "managing conservatorship of a child." TEX. FAM.CODE § 152.002(2). "Managing conservatorship" is "the relationship between a child and a managing conservator appointed by court order." TEX. FAM.CODE § 101.019. Although a court may not exercise its continuing jurisdiction to modify "custody" or "managing conservatorship" if the child has acquired a new home state, it retains jurisdiction to modify visitation, which the Family Code defines as "possession of or access to a child," so long as at least one of the parties continues to reside in Texas. *See* TEX. FAM.CODE § 155.003(c); *Welborn–Hosler v. Hosler,*

870 S.W.2d 323, 327 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Hemingway v. Robertson,* 778 S.W.2d 199, 201–02 (Tex. App.—Houston [1st Dist.] 1989, no writ). A child establishes a new home state by living there with a parent for at least six consecutive months. *See* TEX. FAM.CODE § 152.002(6). It is undisputed that when Daniel filed his motion to modify, the child's home state was, and it remains, Colorado.[1] Thus, if Daniel's motion seeks to modify custody or managing conservatorship, the trial court's dismissal was proper. On the other hand, if his motion merely concerns visitation, as the court of appeals concluded, the trial court abused its discretion in dismissing the motion.

The court of appeals based its analysis on what it considered the "plain meaning" of section 155.003, which provides:

**§ 155.003. Exercise of Continuing, Exclusive Jurisdiction**

(a) Except as otherwise provided by this section, a court with continuing, exclusive jurisdiction may exercise its jurisdiction to modify its order regarding managing conservatorship, possessory conservatorship, *possession of and access to the child,* and support of the child.

(b) A court of this state may not exercise its continuing, exclusive jurisdiction to modify *managing conservatorship* if:

(1) the child's home state is other than this state; or

(2) modification is precluded by Chapter 152.

(c) A court of this state may not exercise its continuing, exclusive jurisdiction to modify possessory conservatorship or *possession of or access to a child* if:

(1) the child's home state is other than this state *and all parties have established and continue to main-*

---

1. No party suggests that Colorado would not have jurisdiction or would decline jurisdiction if Texas does not have jurisdiction. *See* COLO. REV.STAT. §§ 14–13–104, 14–13–115.

*tain their principal residence outside this state;* or

(2) each individual party has filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction of the suit.

971 S.W.2d at 128–29 (quoting Tex. Fam. Code § 155.003(a)-(c)) (emphasis added).

The court of appeals determined that the statute "clearly distinguishes the concepts of managing conservatorship and 'possession of or access to a child.' " *Id.* at 129. It likened the right of primary possession to visitation, over which the trial court retains continuing exclusive jurisdiction. *See id.* The court also reasoned that a change in the right to establish a child's domicile does not modify the managing conservatorship "because both parents retain their status as joint managing conservators of the child." *Id.* Consequently, the court of appeals held that the statute did not restrict the trial court's continuing modification jurisdiction. *See id.*

The court of appeals' analysis is defective in two respects. First, it implies that the statutory distinction between "managing conservatorship" and "possession of or access to a child" renders the terms mutually exclusive. 971 S.W.2d at 129. Such an implication ignores the fact that a managing conservatorship encompasses certain aspects of possession and access. When establishing a conservatorship, the court must specify the rights to be exercised exclusively by one parent. *See* Tex. Fam. Code § 153.071(3). The decree in the present case provides that Susan alone has "the sole legal right to determine the residence of the child" and "the primary custody and control of the child." Although these rights necessarily encompass "possession of or access to the child," they are fundamentally "rights inherent in a custody status." *Leithold v. Plass,* 413 S.W.2d 698, 700 (Tex.1967).

Second, the court of appeals tacitly concludes that a custody modification does not occur in a joint managing conservatorship unless the movant is seeking to become the sole managing conservator. In other words, Texas courts retain continuing jurisdiction to modify any and all rights assigned to managing conservators, so long as the movant does not seek to change a joint managing conservatorship to a sole managing conservatorship. This mechanistic interpretation does not follow from a plain reading of the statute and improperly elevates form over substance. By looking solely to the nomenclature of conservator status, the court of appeals ignores the actual effect the proposed modification will have on that status. While a change in the type or designation of a conservatorship would undoubtedly be a custody modification, we disagree that *only* those modifications implicate custody under the UCCJA. If the Legislature had intended such a limitation, it could have so provided.

 Our objective when construing a statute is to determine and give effect to the Legislature's intent. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 484 (Tex.1998); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). To ascertain that intent, we look first to the statute's plain language. *See Liberty Mutual,* 966 S.W.2d at 484 (citing *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939 (Tex. 1993)). We must view the statute's terms in context, and give them full effect. *See id.* Under the Code Construction Act, we may look to the statute's legislative history in gleaning the Legislature's intent. *See* Tex. Gov't Code § 311.023(3). We also bear in mind the circumstances under which the statute was enacted, and the consequences of any particular construction. *See* Tex. Gov't Code § 311.023(2), (5). Further, we presume that the Legislature acted with knowledge of the common law and court decisions. *See McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (1942).

As we have said, exactly what type of change to a managing conservatorship

would amount to a custody modification under section 152.003 is not evident from the statute's plain language. Thus, we turn to other appropriate tools of construction. In this case, an examination of the UCCJA's history and the legal context in which it was enacted is instructive. By the end of 1983, all fifty states and the District of Columbia had adopted some version of the model UCCJA. The UCCJA was designed to address problems associated with the growing number of custody disputes between geographically separated parents. See UNIF. CHILD CUSTODY JURISDICTION ACT, 9 U.L.A. 116 (1968) (Prefatory Note); Brigitte M. Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications*, 65 CALIF. L.REV. 978, 982 (1977). A primary concern was the refusal of many courts to accord finality to custody decrees issued by other states, resulting in frequent relitigation of custody judgments, often to the child's detriment. See UNIF. CHILD CUSTODY JURISDICTION ACT, 9 U.L.A. 116 (1968) (Prefatory Note); Bodenheimer, *supra*, at 982–83. Texas became the forty-ninth state to adopt the UCCJA in 1983, albeit with some significant changes that guide our analysis in this case.

Under the model UCCJA, a court may assert jurisdiction to determine custody in the initial action or by subsequent modification when: (1) the state is the child's home state ("home state" jurisdiction); (2) the child and at least one parent have a significant connection with the state ("significant connection" jurisdiction); (3) the child is physically present in the state and an emergency exists to protect the child because of abandonment or abuse ("emergency protection" jurisdiction); or (4) no other state would have jurisdiction under any of the other three criteria ("default" jurisdiction). See UNIF. CHILD CUSTODY JURISDICTION. ACT § 3, 9 U.L.A 143–44 (1968); John J. Sampson & Harry L. Tindall, *The UCCJA Comes to Texas—As Amended, Integrated and Improved*, 46 TEX. BAR J. 1096, 1099 (1983). The model Act gives equal priority to home state and significant connection jurisdiction for both initial and modification decisions. See id. Significantly, Texas varied from the model Act by giving priority to home state jurisdiction. See TEX. FAM.CODE §§ 152.003(a); Sampson, *supra*, at 1099.

Texas made another important departure from the model UCCJA. Under the model Act, there are no greater limits upon a court's modification jurisdiction than upon its initial jurisdiction to make a custody determination. See UNIF. CHILD CUSTODY JURISDICTION ACT § 3, 9 U.L.A. 143–44 (1968).[2] Under the Texas UCCJA, however, courts are specifically prohibited from exercising their continuing jurisdiction to modify custody (defined as "managing conservatorship") if the child has established a new home state. See TEX. FAM.CODE § 152.003(d); Sampson, *supra*, at 1099. By restricting modification jurisdiction in this manner, Texas recognized that "[o]nce the child and the custodian ... have established a new home state, that state is far better equipped to evaluate the present circumstances of the child. The evidence about the circumstances of the child likely to be available to the original state will be stale at best, and nonexistent at worst." Sampson, *supra*, at 1102; see also HOUSE JUDICIARY COMM., BILL ANALYSIS, Tex. S.B. 439, 68th Leg., R.S. (1983).

Presently, in Texas, there is a rebuttable presumption in favor of joint managing conservatorship. See TEX. FAM.CODE § 151.131(b). That presumption did not exist at the time Texas adopted the UCCJA. In fact, the Family Code did not authorize courts to appoint joint managing

2. In 1997, the National Conference of Commissioners on Uniform State Laws adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to rectify perceived shortcomings in the UCCJA. The UCCJEA more closely resembles the Texas UCCJA by affording priority to home state jurisdiction. See UNIF. CHILD CUSTODY JURIS. AND ENF. ACT § 201, 9 U.L.A. 250–51 (Supp. 1998).

conservators unless the parties agreed in writing. *See* Act of May 25, 1973, 63 rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen Laws 1411, 1422, 1424, *codified as amended at* Tex. Fam.Code §§ 153.131, 153.132, 153.192, and Act of May 18, 1979, 66 th Leg., R.S., ch. 313, § 1, 1979 Tex. Gen. Laws 717, *codified as amended at* Tex. Fam.Code § 153.006. Instead, the Family Code presumed that one parent would have a custodial relationship with the child as its sole managing conservator, while the other parent would be named a possessory conservator, exercising specified visitation rights. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1422, 1424, *codified as amended at* Tex. Fam.Code §§ 153.131, 153.132, 153.192. The language the Legislature employed in section 152.003 reflects that presumption. *See* Tex. Fam.Code § 152.003(d) ("[A] court may not exercise its continuing jurisdiction to modify custody if the child and *the party with custody* have established another home state . . . . ") (emphasis added). Thus, it is logical to conclude that the Legislature, in its enactment of the UCCJA, intended to preclude Texas courts from exercising jurisdiction over the managerial rights that would have belonged exclusively to a sole managing conservator, the party with "custody." Among those rights were "the right to have physical possession of the child and to establish its legal domicile," subject to a possessory conservator's visitation rights. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1420, 1423, *codified as amended at* Tex. Fam.Code § 153.132.

The Legislature has directed us to construe the UCCJA to promote the purposes expressed in section 152.001(a) of the Act. *See* Tex. Fam.Code § 152.001(b). Those purposes include promoting cooperation with the courts of other states "to the end that a custody decree is rendered in the state that can best decide the case in the interest of the child," and ensuring that child custody litigation occurs in the state with the closest connection to the child and the child's family, "where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available." *See* Tex. Fam. Code § 152.001(a)(2, 3).

■ Viewing the statute in context, and in light of its purposes and history, we conclude that the court of appeals erred in reversing the trial court's order. Daniel's motion sought to modify the types of rights that were core rights of managing conservatorship at the time the Legislature adopted the UCCJA. Under the 1996 order, Susan had the exclusive right to establish the child's domicile. She also had exclusive primary possession of the child, subject to Daniel's right to specified periods of possession. This Court had equated these rights with "custody" at the time the Legislature adopted the UCCJA. *See Leithold v. Plass,* 413 S.W.2d at 700. Although the court of appeals concluded that these were merely rights of "possession or access," they go far beyond what would ordinarily be considered visitation. *See* Tex. Fam.Code § 152.002(11).

Labels aside, in deciding Daniel's motion a trial court must consider whether it is in the child's best interest to continue to reside and attend school in Colorado. *See Bast v. Rossoff,* 167 Misc.2d 749, 635 N.Y.S.2d 453, 456 (N.Y.Sup.1995), *modified* 91 N.Y.2d 723, 675 N.Y.S.2d 19, 697 N.E.2d 1009 (1998) (warning that courts should not be misled by nomenclature when it comes to joint custody arrangements). Regardless of the parents' interests, such a change could have a substantial impact upon the child. *See* Unif. Child Custody Jurisdiction Act, U.L.A., 9 U.L.A. 117 (1968) (Prefatory Note). Undoubtedly, significant evidence concerning the effect of that change will be available in Colorado, where the child had been living for far more than six months when Daniel filed his motion. Thus, our conclusion is consistent with the fundamental purposes underlying the UCCJA. *See* Tex. Fam.Code § 152.001(a)(2, 3).

In summary, we hold that a motion like Daniel's, which seeks to alter a joint man-

aging conservator's exclusive rights to primary possession and to establish the child's residence, is a motion to modify custody under the UCCJA. Unless all parties have otherwise agreed in writing, a Texas court may not exercise continuing jurisdiction to modify those rights when the child has established a new home state. *See* TEX. FAM.CODE § 152.003(d). Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's order of dismissal.