In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00024-CV


______________________________





IN RE:


REBECCA SAMFORD








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Opinion by Chief Justice Morriss



O P I N I O N


 Former spouses Rebecca Samford and Archie Morris Samford, Jr., (1) continue their ongoing
struggle focused primarily on the management and possession of their minor child, A.S. This is now
the third time the struggle has come to this Court.

 Again Morris' effort to obtain modification of a child custody order over A.S. is central to
this case. Originally, Morris sought to change Rebecca and Morris' joint managing conservatorship
over A.S. to name Morris as sole managing conservator. Morris has since amended his motion to
relinquish that request--a change which denies to Rebecca the mandamus relief she now requests
of this Court.

 A brief review of this struggle will help provide context for the current mandamus request. 
Initially, due to Rebecca's behavior, the details of which are not germane here, the trial court had
struck her pleadings and had entered a default judgment against her, modifying the conservatorship
of A.S. Rebecca appealed, claiming that, although her pleadings had been struck, she was entitled
to have a jury determine whether Morris had proven the required elements in his motion to change
the conservatorship. We concluded that, because a parent's failure to respond should not form the
sole basis for the trial court's judgment in a family law matter, some fact-finding was required and
a jury was required to find the requisite facts. See Tex. Fam. Code Ann. § 105.002(a)(c) (Vernon
Supp. 2007). We also agreed with a concurring opinion in Marr v. Marr, 905 S.W.2d 331, 333-34
(Tex. App.--Waco 1995, no writ), which stated that "a defaulting defendant (by virtue of death
penalty sanctions) in a family law matter is still entitled to rely on her jury demand and have a jury
trial on any fact question related to the custody modification when the jury demand is not struck." 
See In re A.S., No. 06-07-00044-CV, 2007 WL 4232977 (Tex. App.--Texarkana Dec. 4, 2007, no
pet.). Under the posture of the case at that time, we found that denying Rebecca a jury trial was
harmful error and reversed and remanded the case for further proceedings.

 After remand, Morris amended his motion to eliminate his request that A.S.'s conservators
be changed and asked that the case be withdrawn from the jury docket. When the trial court agreed,
Rebecca filed this petition for writ of mandamus, asking this Court to direct the trial court to give
her a jury trial on Morris' amended motion. Because Morris' amended motion seeks neither a change
in A.S.'s conservators nor a designation that either Rebecca or Morris has the exclusive right to
designate A.S.'s primary residence, we conclude that no pending request allows for decision by a
jury.

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of
discretion, or, in the absence of another statutory remedy, when the trial court fails to observe a
mandatory statutory provision conferring a right or forbidding a particular action. Abor v. Black, 695
S.W.2d 564, 567 (Tex. 1985). Although the right to mandamus is quite limited, recent authority
suggests that denying a jury trial, when such a right is clearly shown, can be addressed by both
appeal and mandamus. See In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 139 (Tex. 2004).

 When we remanded this appeal to the trial court, we did not order it to conduct a jury trial. 
We found it to be error to deny one under the facts then existing, and remanded the case for further
proceedings. The mandamus record before us shows that the situation has changed since that time. 
Although we did conclude at the time that, even without live pleadings, Rebecca remained entitled
to a jury trial, that conclusion was based on the fact that a jury trial was available on Morris' then
pending request that the existing joint managing conservatorship be changed to name Morris as sole
managing conservator. See Tex. Fam. Code Ann. § 105.002(c)(1)(A) (Vernon Supp. 2007). As we
have said, Morris' motion to modify, as currently amended, now contains neither a request to change
conservators nor a determination of which joint managing conservator has the exclusive right to
designate A.S.'s primary residence. The motion, as amended, seeks an order that A.S. will reside
with Morris during the school week and that Morris will have the authority to make certain health
care and education decisions concerning A.S. The motion also seeks a change in child support,
contempt relief for Rebecca's failure to sign a deed and tax exemption document as previously
ordered by the trial court, a restraining order against Rebecca, and attorney's fees. Those issues are
not ones that, under the statute, support a right to a jury trial. See Tex. Fam. Code Ann. §
105.002(c)(2) (Vernon Supp. 2007).

 Rebecca's sole contention in this mandamus is that the trial court failed to perform the
ministerial act of conducting a jury trial, which she says was ordered by this Court. She also directs
our attention to Phillips v. Beaber, 995 S.W.2d 655 (Tex. 1999), arguing that, because of the nature
of the relief sought by Morris, the motion should be treated as effectively an attempt to change
conservatorship. In Phillips, the Texas Supreme Court reviewed a father's motion to modify joint
managing conservators' exclusive rights to primary possession and to establish a child's residence
after the child moved to a new home state. The court concluded that it was really a motion to modify
"custody" rather than mere "possession or access" under the Uniform Child Custody Jurisdiction and
Enforcement Act (UCCJA). Based on that conclusion, the court applied the UCCJA and concluded
that the trial court could not exercise continuing jurisdiction in the absence of a written agreement
of all parties. Phillips is distinguishable in two notable ways, both the different legal issues there
involved and the significantly greater rights modification there sought. (2)

 What force remains of Phillips, for the current discussion, is merely the proposition that a
pleading should be defined by its substance, not necessarily the way it is labeled. Id. at 660-61. We
agree that artful labeling of pleadings must yield to the true content of those pleadings. We look at
the substance of a pleading to determine its nature, not merely at the form or title given to it. See
Tex. R. Civ. P. 71; State Bar v. Heard, 603 S.W.2d 829, 833 (Tex. 1980); BCY Water Supply Corp.
v. Residential Invs., Inc., 170 S.W.3d 596 (Tex. App.--Tyler 2005, no pet.).

 Rebecca's argument here is that Morris' motion, despite purporting merely to change
visitation, effectively seeks Morris' appointment as sole managing conservator or his being given
exclusive right to designate A.S.'s primary residence. We disagree.

 The record shows that the parties, joint managing conservators, had what was described as
week-to-week visitation and that the final decree of divorce restricted domicile to Panola County,
Texas, without placing the right to establish domicile in either joint managing conservator. As
described above, the amended motion does not seek to change custody or the current type of
conservatorship. It does seek to change visitation schedules, but not to the point that it would
eliminate custodial visitation by either parent. It does not seek a right to establish domicile in a
different geographic area, nor does it seek to effect any designation of primary residence.

 Under these facts, the record does not show that Rebecca is entitled to a jury trial on these
issues. Therefore, it does not show that the trial court failed to exercise a ministerial duty when it
removed the case from the jury docket and set it for trial to the court.





 We deny the petition for writ of mandamus.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 27, 2008

Date Decided: March 28, 2008
1. For clarity, in this opinion we use Rebecca and Morris as the names of the litigants.
2. See Act of April 22, 1999, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52, 63, 65
(striking former Section 152.001(a)(2), (3) and former Section 152.003(d) of the Texas Family Code,
the statutes involved in Phillips).



"61" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light List Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00101-CV

                                                ______________________________

 

 

 

                        IN THE INTEREST OF J.S.H., A
MINOR CHILD

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Franklin County, Texas

                                                             Trial
Court No. 9753

 

                                                          
                                        

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            During
the six-year period Billy Jack Holloway was supposed to be making regular child
support payments, he was wont to miss that obligation, occasioning numerous
delinquencies.  In previous attempts to
compel compliance with the child support obligation, Holloway had been held in
contempt and placed on community supervision. 
A hearing was held June 25, 2009, on the motion of the Office of the
Texas Attorney General (OAG) to revoke Holloways community service.  During the period after Holloway had
originally been ordered to pay child support and the hearing date,  Holloway had been determined to have become
totally and permanently disabled.  At the
conclusion of the hearing, the trial court confirmed arrearages in both
Holloways child support and medical support obligations.  However, the trial court retroactively
reduced both the child support arrearages and the medical support arrearages to
the date Holloway had become totally and permanently disabled.  In addition, the court ordered termination of
prospective medical support as of June 1, 2009, and awarded judgment to Brandi
Nicole Eastman (mother of J.S.H.) for Social Security disability benefits
received by Holloway.  

            The
OAG contends that the trial court abused its discretion in (1) reducing child
support and medical support arrearages, (2) terminating current medical
support, and (3) failing to award statutory interest on the judgment for lump
sum distribution arrearages.  Holloway
filed a brief that simply denied that the court had abused its discretion.

            We
reverse in part, affirm in part, and remand for a determination of the
appropriate medical support to be included in the judgment.

I.          BACKGROUND

            The
original order determining that a parent and child relationship existed between
Holloway and J.S.H. was entered in 2003. 
Under that order, Holloway was directed to commence child support payments
of $206.00 per month and cash medical support in the amount of $18.00 per
month, the first of these ordered installments to begin July 1, 2003.  Holloway failed to comply and in January
2007, the OAG filed a motion for enforcement of Holloways child and medical
support obligations.  

            In
response to that motion, the trial
court entered a February 2007 order to enforce Holloways child support
obligation; this also confirmed arrearages in the payment of both child support
and medical support.  Holloway was found
guilty of punitive contempt of court for failing to pay child support and
medical support as ordered on four different occasions during 2006, and was
ordered committed to jail for 180 days. 
The trial court determined that Holloway was then able to pay child and
medical support arrearages and held him in coercive contempt pending payment of
arrearages.  However, the commitment to
jail was suspended and Holloway was placed on community supervision for sixty
months until arrearages and all fees were paid. 


            Holloway
apparently failed to comply, causing the OAG to file a motion which sought an
order revoking Holloways community supervision.  On September 27, 2007, the trial court issued
an order revoking Holloways community supervision.  This order once again confirmed child and
medical support arrearages, but the previously-ordered community supervision
was reinstated.

            Just
over a year later, the OAG filed a new motion to revoke community supervision,
as child and medical support arrearages continued to accrue.  That same month, Holloway applied for
disability benefits, alleging mental and physical disabilities due to brain
injuries (for which he had undergone surgery) suffered by him as the result of
an altercation in which he had been engaged. 


            On
April 23, 2009, the trial court
entered temporary orders regarding Holloways pending disability claim.  Under this order, Holloway was directed to
notify the OAG of any important developments in the processing of the
disability claim and was prohibited from cashing, depositing, or otherwise
negotiating any retroactive disability insurance benefit checks payable due to
his disability.  In violation of that
order, Holloway did neither of these things; after Holloway received $1,511.98
on the disability claim, he negotiated the check he received.  The final hearing from which this appeal was
taken took place June 25, 2009, and the order was signed five days later.

II.        ANALYSIS

            The OAG appeals
the ruling confirming child and medical support arrearages because it
retroactively exculpated Holloway from the payment of certain support.  We review the courts ruling under an abuse
of discretion standard.  Attorney Gen. of Tex. v. Stevens, 84
S.W.3d 720, 722 (Tex. App.Houston [1st Dist.] 2002, no pet.).  A trial courts judgment is reversed only
when it appears from the record as a whole that the trial court abused its
discretion.  Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Stevens, 84 S.W.3d at 722.  A trial court abuses its discretion when it
acts without reference to any guiding rules or principles, or by acting
arbitrarily or unreasonably.  In re J.I.M., 281 S.W.3d 504, 50607
(Tex. App.El Paso 2008, pet. denied). 
Moreover, a trial court has no discretion to misinterpret or misapply
the law.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).  Accordingly, the failure to correctly analyze
or apply the law constitutes an abuse of discretion.  Id.;
Stevens, 84 S.W.3d at 722. 

1.         The
Trial Court Had No Discretion to Reduce Child and Medical Support Arrearages

 

            In the June 2009
order, the trial court confirmed child support arrearages in the amount of
$7,095.51.  However, upon later hearing
evidence of Holloways total and permanent disability commencing in October
2008, the trial court released child support arrearages from that date until
the time of trial, thus releasing $2,780.70 in child support arrearages.  Likewise, the court confirmed medical support
arrearages in the amount of $685.60, but released $246.30 of this amount from
the time of Holloways disability until the time of trial.  Judgment was entered for past due child
support of $4,314.81 and past due medical support of $439.30.  The first issue on appeal is whether the
trial court acted within its discretion in releasing these amounts from
confirmed arrearages.  

            Section
157.263 of the Texas Family Code provides that when a motion for enforcement
requests a money judgment for arrearages, the trial court shall confirm the
amount of the arrearages and render one cumulative money judgment.  Tex.
Fam. Code Ann. § 157.263 (Vernon 2008). 
In this regard, it has been said that the trial court acts as a mere
scrivener who mechanically tallies the amount of the arrearages.  Lewis
v. Lewis, 853 S.W.2d 850, 854 (Tex. App.Houston [14th Dist.] 1993, no
writ).  Thus, although the amount of
arrearages is subject to a counterclaim for offset, the trial court has no
authority to reduce or modify the amount of arrearages in rendering
judgment.  Beck v. Walker, 154 S.W.3d 895, 903 (Tex. App.Dallas 2005, no
pet.).   Even parents of the child may
not settle child support claims until after the arrearages have been confirmed
and cumulated in a money judgment or until the trial court has lost
jurisdiction to enforce the unpaid child support debt.  Williams
v. Patton, 821 S.W.2d 141, 146 (Tex. 1991).

            Here,
the trial court complied with the preceding provision of the Code when it
confirmed and entered judgment on past due child and medical support in the
amounts of $7,095.51 and $685.60, respectively. 
Buzbee v. Buzbee, 870 S.W.2d
335, 340 (Tex. App.Waco 1994, no pet.) (only after arrearage is confirmed can
judge reduce amount of judgment to reflect offsets and counterclaims for actual
support).  After entering judgments in
the preceding amounts, the trial court then provided for a Release of Child
Support Arrears and a Release of Medical Support Arrears followed by a
section entitled Judgment After Release in which the reduced amounts of child
and medical support are reflected.   

            Section
157.262(f) of the Texas Family Code provides that [t]he money judgment for
arrearages rendered by the court may be subject to a counterclaim or offset as
provided by this title.  Tex. Fam. Code Ann. § 157.262(f)
(Vernon Supp. 2009).  In accord with this
section, the OAG contends that the Texas Family Code provides the only basis
for offsets and credits available to one who owes child support, and the trial
court did not have the discretion to grant a credit that was not outlined in
the Code.  See Tex. Fam. Code Ann.
§ 157.008 (Vernon 2008), § 157.009 (Vernon Supp. 2009).[1]  

            It
appears that the trial courts release of past due child and medical support
was based upon Holloways inability to pay. 
At the hearing on the OAGs motion for new trial, Holloway argued that
because he presented testimony at trial of his inability to pay, the motion
should be denied.  The referenced
testimony relates to Holloways head injury and subsequent surgery, resulting
in his disability and consequent inability to work.  At the conclusion of the hearing, the court
stated that it finds under 157.008 that the obligor lacked the ability to
provide support in the amount ordered.  Tex. Fam. Code Ann. § 157.008.  The section cited in the order is entitled Affirmative
Defense to Motion for Enforcement of Child Support and it provides as follows:

            (c)        An obligor may plead as an affirmative
defense to an allegation of contempt or of the violation of a condition of
community service requiring payment of child support that the obligor:

 

                        (1)        lacked
the ability to provide support in the amount ordered;

 

                        (2)        lacked property that could be sold,
mortgaged, or otherwise pledged to raise the funds needed;

 

            (3)        attempted unsuccessfully to borrow the
funds needed; and

 

            (4)        knew of no source from which the money
could have been borrowed or legally obtained.

 

Tex.
Fam. Code Ann. § 157.008(c).  

            The
OAG contends that because Section 157.008(c) is designed solely to provide an
affirmative defense for contemnors and probationers against a guilty verdict
and/or confinement, the trial court erred in utilizing this as a means to grant
a credit against Holloways past due child support.  See Ex
parte Rojo, 925 S.W.2d 654, 655 (Tex. 1996) (holding civil contempt illegal
when obligor financially unable to pay amount required by courts commitment
order).  As stated in the statute, Section
157.008(c) may be employed as an affirmative defense to an allegation of
contempt or of the violation of a condition of community service requiring
payment of child support.  Tex. Fam. Code Ann. § 157.008(c).  In such a proceeding, the obligee bears the
burden of proving that child support was due and not paid.  In re
D.S.P., 210 S.W.3d 776, 781 (Tex. App.Corpus Christi 2006, no pet.).  Once the obligee has met that burden, the
obligor may plead the affirmative defense of inability to provide support,
which the obligor then has the burden to prove by a preponderance of the
evidence.  Id.; see also Tex. Fam. Code Ann. §§ 157.006,
157.008(c) (Vernon 2008).  

            Although
Section 157.008(d) may be utilized to prove an offset to child support, we find
no authority to support the proposition that subsection (c) may likewise be so
utilized.  See Tex. Fam. Code Ann.
§ 157.008(d).[2]
 Moreover, because the affirmative
defense under Section 157.008(c) applies exclusively to an allegation of
contempt or to an attempt to revoke community service, the application of
Sections 157.262 and 157.263 to reduce the amount of a previously-adjudged
arrearage is error.  In re A.D.S., No. 14-08-00147-CV, 2009 WL 3000714, at *3 (Tex. App.Houston
[14th Dist.] Sept. 22, 2009, no pet.) (mem. op.); see also In re A.F.N., No.
03-07-00164-CV, 2008 WL 615428, at *1 n.4 (Tex. App.Austin Mar. 5, 2008, no
pet.) (mem. op.) (Section 157.008 of Texas Family Code does not include earning
capacity as ground for offset and earning capacity is only relevant on issue of
contempt and violation of community service).

            Conversely,
the offset provided by subsection (d) applies when pled as an affirmative
defense to a motion for enforcement of child support.  To conclude that the affirmative defense
(e.g., the inability to pay) to an allegation of contempt or of violation of a
condition of community service can also be utilized as an offset against a
claim of support is an improper mixing of remedies.  In fact, the OAG contends that in so doing,
the trial court acted without reference to any guiding principles set out in
the Texas Family Code.  We agree.  

            By
reducing a proven arrearage as part of its order, the trial court attempted to
apply relief not outlined in the Texas Family Code.[3]  The Legislature has provided tools and
defenses for an obligor who is unable to pay all or part of the ordered support
to avoid an arrearage.  See, e.g., Tex. Fam. Code Ann. § 157.008 
(proving affirmative defenses to motion for enforcement of child
support), § 156.006 (Vernon 2008) (providing court may render temporary order
in suit for modification).  An obligor
who fails to take advantage of these provisions runs the risk of facing a judgment
for arrearages which the trial court has no discretion to reduce or modify.  J.I.M.,
281 S.W.3d at 50910.  On the record
before this Court, we are compelled to conclude that the trial court exceeded
the scope of its discretion in reducing Holloways child support and medical
support arrearages.[4]  

2.         The
Trial Court Abused Its Discretion When It Terminated Current Medical Support

 

            In
its original order establishing the parent-child relationship between Holloway
and J.S.H., the trial court found that neither Holloway nor Eastman had access
to private health insurance for J.S.H.; it accordingly ordered Holloway to pay
$18.00 per month in current medical support. 
At the June 2009 hearing, the trial court ordered termination of the
current and prospective medical support obligation effective June 1, 2009.  The OAG contends that because the Texas
Family Code requires the trial court to order medical support, the trial court
abused its discretion in terminating medical support for the benefit of J.S.H.

            The
Texas Family Code mandates the provision of medical support for any child
subject to child support.  See Tex.
Fam. Code Ann. § 154.181(a) (Vernon Supp. 2009) ([t]he court shall
render an order for the medical support of the child); In re J.S.P., 278 S.W.3d 414, 424 (Tex. App.San Antonio 2008, no
pet.) (Accordingly, the trial court had no discretion but to order one party
or the other to provide health insurance for J.S.P., irrespective of whether
Pendleton pleaded for it.).  If the
trial court requires that the child must participate in a government medical
assistance plan or health plan, the court must order cash medical support from
the obligor.  Tex. Fam. Code Ann. § 154.182(b)(3) (Vernon Supp. 2009).[5]  

            The
sole circumstance available under the Texas Family Code which allows the
termination of current cash medical support is that which exists when the
obligor provides private health insurance for the child.  Tex.
Fam. Code Ann. § 154.182(b)(3).  

            Presumably,
the trial court discontinued cash medical support payments for the benefit of
J.S.H. based upon Holloways disability and his lack of earning potential.  The record indicates that Holloways monthly
Social Security disability benefits total $755.00.  Fifty percent of those monthly benefits
($377.50) are paid out in child support.[6]  Holloway is the father of two children by his
current marriage, both of whom reside with him, and his monthly disability
benefit is the familys sole source of income. 
That income amounts to $377.50 (after payment of current child
support).  Holloways mortgage payment is
$275.00.  Understandably, the trial court
was concerned about Holloways financial circumstances.  

            In
this instance, however, the trial courts options were limited to a
modification of the cash medical support payments to comport with J.S.H.s
monthly benefit.[7]  Tex.
Fam. Code Ann. § 154.132 (Vernon 2008) (Application of Guidelines
to Children of Certain Disabled Obligors).[8]  Because there was no evidence that Holloway
had provided health insurance for the benefit of J.S.H., and that is the only
avenue by which an ongoing cash medical support obligation can be terminated,
the trial court was not at liberty to terminate provision of medical support
for J.S.H., and exceeded the scope of its discretion in doing so. 

            3.         No
Additional Interest Is Payable on Lump Sum Distribution

            In
its July 2009 order, the trial court found Holloway in violation of the
temporary order of April 2009, by receiving a lump sum distribution from the
Social Security Administration (SSA) in the amount of $1,511.98 on its finding
of total and permanent disability and then negotiating payment of the check,
paying nothing on his child support arrearage.  Accordingly, the court ordered Holloway to
reimburse Eastman one-half of the distribution (or $755.99) at the rate of ten
dollars per month until paid.  The order
makes no provision for the allowance of post-judgment interest on this
$755.99.  The OAG claims the trial court
had a ministerial duty to award statutory interest on this portion of the
judgment.[9]
 We disagree.

            When
Holloway was ordered to reimburse Eastman for the one-half of the distribution
received from the SSA, he owed past due child support, which had been reduced
to judgment and was accruing statutory interest.  Had Holloway acted as he had been directed,
the funds would have been applied to the deficiency and there would have been
no more interest accruing on the part of the child support obligation which had
been met by the payment.  To award
interest on funds Holloway received from the SSA would have the effect of
awarding interest twice on the same unpaid funds.  The trial court was correct in its
determination that such amount was not subject to statutory interest.  We overrule this point of error.

III.       CONCLUSION

            We reverse that
portion of the judgment which releases past due child and medical support and
render judgment that confirms child and medical support arrearages in the
amounts determined to exist on May 31, 2009. 
We affirm that portion of the judgment ordering Holloway to pay $755.99
to Eastman without additional statutory interest on this amount.  We remand to the trial court for a
determination of the appropriate amount of cash medical support to be included
in the judgment.  

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April
20, 2010

Date Decided:             April
21, 2010

 

 











[1]Section
157.008 of the Code is titled, Affirmative Defense to Motion for Enforcement
of Child Support and sets out the following conditions for asserting this
defense:  (1) the obligee must have
voluntarily relinquished actual possession and control of the child to the
obligor; (2) for a period exceeding court-ordered periods of possession and
access to the child; (3) during which the obligor must have supplied actual
support.  Tex. Fam. Code Ann. § 157.008(a), (b).  If these conditions are met, the obligor may
request reimbursement for that support as a counterclaim or offset against the
claim of the obligee.  Tex. Fam. Code Ann. § 157.008(d).  Holloway does not contend that he is entitled
to an offset under this, and there is no evidence that he ever maintained
actual possession or control of J.S.H.

 





[2]Section
157.008(d) provides:  An obligor who has
provided actual support to the child during a time subject to an affirmative
defense under this section may request reimbursement for that support as a
counterclaim or offset against the claim of the obligee.  Tex.
Fam. Code Ann. § 157.008(d).

 





[3]The
Legislature recently enacted Section 157.009 of the Texas Family Code, which
provides a credit for disability benefits:

 

            In addition to any other credit or offset available to
an obligor under this title, if a child for whom the obligor owes child support
receives a lump-sum payment as a result of the obligors disability and that
payment is made to the obligee as the representative payee of the child, the
obligor is entitled to a credit.  The
credit under this section is equal to the amount of the lump-sum payment and
shall be applied to any child support arrearage and interest owed by the
obligor on behalf of that child at the time the payment is made.

 

Tex. Fam. Code Ann. § 157.009 (effective June 19, 2009).  Because this provision does not address the
retroactive release of child support arrearages in the absence of a lump sum
payment, it does not serve to validate the action of the trial court in
releasing the subject arrearages.

 





[4]A
medical support arrearage is a child support obligation enforceable by the same
methods as any other child support obligation. 
Tex. Fam. Code Ann. §
154.183(a)(2), (3) (Vernon Supp. 2009).

 





[5]The
amount of the cash medical support is not to exceed nine percent of the
obligors annual resources, as described by Section 154.062(b).  Tex.
Fam. Code Ann. § 154.182(b)(3).

 





[6]Holloway
is responsible for child support for J.S.H. and C.L.H., Holloways child by a
different mother. 

 





[7]We
observe that the trial court did, in fact, modify Holloways child support
obligation in light of his disability. 

 





[8]Section
154.181 of the Texas Family Code addresses the medical support order, and
provides that [t]he court shall render an order for the medical support of the
child as provided by this and Section 154.182 in:  . . . any other suit affecting the
parent-child relationship in which the court determines that medical support of
the child must be established, modified, or clarified.  Tex.
Fam. Code Ann. § 154.181(a)(2).





[9]The
judgment awards post-judgment interest on child and medical support arrearages.