IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-093-CV




TRACI WILLIAMS,



 APPELLANT


vs.





RICHARD L. ANDERSON,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 478,367, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING


 





 Traci Williams appeals from a trial-court decree appointing Richard L. Anderson
possessory conservator of a child she bore by another man. We will reverse the decree and render
judgment that Anderson take nothing by his suit affecting the parent-child relationship.



THE CONTROVERSY


 The child was born to Williams, out of wedlock, July 1, 1986. The biological
father was Anderson's roommate. (1) Williams and Anderson became friends. She and the child
visited Anderson after he moved from Houston to live first in Dickinson and then in Austin. In
February 1989, while Anderson lived in Austin, Williams asked Anderson if the child might live
with him while Williams attended school in Houston. She explained that she feared for the child's
safety owing to the dangerous neighborhood where she and the child lived in Houston.

 Anderson consented. The child began to live with him, in Austin, sometime in
March 1989. In August 1989, the child went to Houston where he lived for five or six weeks
with Williams. The child then returned to Austin in late September 1989 to live again with
Anderson. On December 25, 1989, the child traveled once again to Houston for a Christmas visit
with Williams. She retained the child and notified Anderson in January that the child would
thereafter reside with her permanently.

 On January 25, 1990, Anderson filed in district court in Austin an original "suit
affecting the parent-child relationship." (2) He prayed in his petition for issuance of a restraining
order, temporary injunction, and permanent injunction--each directed against Williams's continuing
to exercise possession and control over the child--and for general relief. Anderson's petition did
not request that he be appointed managing or possessory conservator of the child; such relief is
perhaps implicit in his allegation that his appointment as managing conservator "would be in the
best interest of the child." We will, for purposes of discussion, assume that he prayed for
appointment to either position.

 Following certain preliminary matters and after a bench trial, the court below
rendered a decree appointing Anderson possessory conservator (with specified duties, rights,
privileges, and powers regarding the child) and appointing Williams managing conservator. 
Williams appeals to this Court on two points of error challenging the trial court's designation of
Anderson as possessory conservator.



ANDERSON'S ASSERTED INTEREST


 The parties' briefs nominally join issue on whether Anderson had "standing" to
bring his cause of action; their respective arguments indicate something else entirely.

 Section 11.03(a) of the Family Code specifies the natural and artificial persons who
may bring a suit affecting the parent-child relationship--a statutory cause of action defined in
section 11.01(5) of the Code and authorized in section 11.02. Section 11.03(a)(8) states, for example, that such a suit may be brought by "a person who has had actual possession and control
of the child for at least six months immediately preceding the filing of the petition." See Tex.
Fam. Code Ann. § 11.03(a)(8) (West Supp. 1993). The effect of this subsection is to create in
a person, who shows himself qualified thereunder, a "justiciable interest" in the child--a substantive
interest that the law will enforce and protect because it exists under section 11.03(a)(8), even
though it does not exist at common law. In this respect, subsection (8) is unlike the other
subsections of section 11.03(a).

 Whether Anderson acquired such a substantive interest is not a question of
"standing." The judicial doctrine of "standing" concedes that an interest is justiciable and inquires
whether the interest belongs to the one asserting it. See 1 Texas Civil Practice § 5.8, at 478-79
(Diane M. Allen et al. eds., 1992). In the present case, the interest belongs undeniably to
Anderson if it exists at all. The questions raised on appeal concern whether, under the evidence,
he acquired the substantive or justiciable interest made possible by section 11.03(a)(8) of the
Code. The parties' use of the word "standing" derives undoubtedly from similar confusion in
numerous judicial opinions that use interchangeably the terms "standing" and "justiciable interest." 




DISCUSSION AND HOLDINGS


 Section 11.03(a)(8) of the Family Code required that Anderson prove he had
"actual possession and control of the child for at least six months immediately preceding" January
25, 1990, the date he filed his original petition in district court. The district court found that he
did indeed have such possession and control for the requisite six months. In her first point of
error, Williams contends the finding is "against the great weight and preponderance of the
evidence." This is incorrect usage of the phrase because the burden of proof lay upon Anderson,
not Williams. See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991). Because Williams prays that we
adjudicate the case on the merits (she requests dismissal of the cause), rather than a remand to the
trial court, we construe her point of error as a complaint that no evidence was introduced to
support the trial-court determination that Anderson had "actual control and possession of the child
for at least six months immediately preceding" January 25, 1990.

 A no-evidence point of error must be sustained when (1) there is a complete
absence of evidence regarding a vital fact; (2) the reviewing court is barred by rules of law or
evidence from assigning weight to the only evidence offered to prove a vital fact; (3) the evidence
offered in proof of a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. Robert W. Calvert, "No-Evidence" and "Insufficient-Evidence" Points of Error, 38 Tex. L. Rev. 361, 363-64 (1960). We will examine the evidence
favorable to the judgment below. It is essentially undisputed.

 Our view of the evidence is controlled by the fact that the word "month," used in
section 11.03(a)(8), means calendar month, as it does in any legislation. (3) We must apply that
meaning as we assess the evidence under the statutory language "actual control and possession of
the child for at least six months immediately preceding" January 25, 1990.

 Williams initially acquired possession and control of the child sometime in March
1989; sometime in August 1989, before the expiration of six calendar months, the child left
Anderson's possession and control to live in Houston for five or six weeks until late September
when the child returned to Austin. The child again left Anderson's possession and control on
December 25, 1989, and did not return. It is therefore undisputed that Anderson had actual
possession and control from some day in March to some day in August 1989, or a period of only
five calendar months at most. See Tex. Gov't Code Ann. § 311.014(c) (West 1988); Gardner v.
Universal Life & Accident Ins. Co., 164 S.W.2d 582 (Tex. Civ. App.--Dallas 1942, no writ) (a
"month" is not computed by counting days but by looking at the calendar, and it runs from a given
day in one month to the same day in the next or specified month). Similarly, Anderson again had
possession and control from some day in late September 1989 to December 25, 1989, when the
child returned to Houston, a period of only three calendar months at most.

 To satisfy the statutory requirement of six calendar months, Anderson must
perforce resort to an interpretation of section 11.03(a)(8). He must argue for a judicial
construction of the statute which holds one of two things: (1) that section 11.03(a)(8) includes,
by implication, a theory of constructive possession and control, so that Anderson may be said to have had "possession and control" of the child, in legal contemplation, notwithstanding that the
child in fact lived in Houston with his mother (who possessed all legal rights regarding the child)
during five or six weeks in August and September 1989; or (2) that the statute includes, by
implication, a theory of cumulative months so that a total of six calendar months of "possession
and control," accumulated over an unspecified period of time, will satisfy the statute even if, as
here, there was no period of six consecutive calendar months. We believe it would be irrational
to impute either implication to section 11.03(a)(8).

 Nothing in section 11.03 or any other statute affirmatively suggests either
implication. Anderson's argument is thus an argument purely from silence, the weakest of all
possible arguments. 

 We may impute an implication to a statute only when it is obvious that the
legislature intended the implication and no other interpretation can be gathered from the statute
as written; implications are never permitted if they will add to or contradict the statute. 
Massachusetts v. United N. & S. D. Co., 168 S.W.2d 226, 229 (Tex. 1942). We cannot say it
is obvious that the legislature intended either implication; however, it is obvious that a reasonable
interpretation can be gathered from the statute, as written, which excludes both implications.

 Concerning the theory of constructive possession and control, we believe 
section 11.03(a)(8) explicitly rejects the theory by the statutory requirement of "actual possession
and control." Concerning the theory of cumulative or non-consecutive months, we believe the
statutory language implicitly rejects the theory when it speaks of "at least six months immediately
preceding the filing of the petition." It is difficult to comprehend how the earlier months of a
broken time period can precede "immediately" the filing of a petition. (4)

 We observe, moreover, that the legislative purpose and intent was to impart
certainty to this part of the Family Code by diminishing the necessity for judicial construction,
an intent inconsistent with Anderson's theories. (5) This indicates that the legislature intended the
words of the statute to carry a literal and ordinary meaning. Finally, we believe the legislature
would have provided expressly for the idea content of Anderson's suggested implications had it
intended them to be a part of section 11.03(a)(8). The two implications are dramatically at odds
with the literal meaning of the statutory expressions. The implications involve important precepts
invoking the possibility of many underlying factual disputes and the need for specific
qualifications of some kind, such as the total length of time over which calendar months may be
accumulated. In an analogous situation, the legislature provided expressly in the Family Code that
periods of temporary absence are counted as part of the six-month period necessary to establish
a child's home state. (6) The silence of section 11.03(a)(8) in such important matters suggests that
the legislature did not intend the implications that Anderson must attribute to the statute in order
to prevail. See State v. Jones, 570 S.W.2d 122, 123 (Tex. Civ. App.--Austin 1978, no writ)
(existence or nonexistence of particular intent may be inferred from statutory omissions).

 We hold, therefore, that no evidence was introduced that Anderson had actual
possession and control of the child as required by section 11.03(a)(8). We sustain William's first
point of error. Because of our holding on her first point of error, we need not address Williams's
second point of error.

 We reverse the trial-court judgment and render judgment that Anderson take
nothing.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Reversed and Rendered

Filed: March 31, 1993

[Publish]

1.   The child's biological father does not have a relationship with the child and signed a
waiver of citation on March 8, 1990. See Tex. Fam. Code Ann. § 11.09(a)(8) (West Supp.
1993). He has no involvement in this lawsuit.
2.   A suit of this character is authorized in Tex. Fam. Code Ann. § 11.02 (West Supp.
1993). Such a suit includes an action in which the petitioner requests appointment of a
managing conservator or possessory conservator. Id. § 11.01(5) (West Supp. 1993).
3.   Tex. Gov't Code Ann. §§ 311.011, 311.014(c) (West 1988).
4. In his brief, Anderson cites T.W.E. v. K.M.E., 828 S.W.2d 806 (Tex. App.--San Antonio
1992, no writ), as authority for his position that the interruptions in his possession of the child
were insufficient to destroy his "actual possession and control" of the child. We believe he
misinterprets the opinion.


 The court in T.W.E. was asked to determine whether a putative father's interest in a child
he had reared as his own for six years was destroyed when his wife left home with the child and
the father did not petition for custody until three weeks later when his wife filed for divorce. The
court construed the three-week interruption immediately preceding the filing of the petition as
insufficient to destroy the putative father's interest in the child.
5.   In 1973, when title 2 of the Family Code was enacted, the "standing" provision was very
brief, providing that "any person with an interest in the child" could bring a suit affecting the
parent-child relationship. See Act of May 25, 1973, ch. 543, sec. 1, § 11.03, 1973 Tex. Gen.
Laws 1411, 1413 (Tex. Fam. Code Ann. § 11.03, since amended). Courts interpreted the
provision narrowly to preclude suits by long-term caretakers of children. See, e.g., Pratt v. Texas
Dep't of Human Resources, 614 S.W.2d 490 (Tex. Civ. App.--Amarillo 1981, writ ref'd n.r.e.). 
As a result, the legislature amended § 11.03 in 1983 by defining "interest in a child" as anyone
with possession and control of the child for at least six months immediately preceding the filing
of a petition. This definition, however, did little to clarify the statute, and many courts continued
to use the statute to restrict access to the courts.


 The legislature, in an effort to provide the courts with guidance, substantially revised the
statute in 1985 by replacing the phrase "any person with an interest in the child" with an explicit
list of those with an interest sufficient to bring suit. The expanded statute provides some persons
with an absolute right to sue, see § 11.03(a)(1)-(6); others may do so only in particular situations,
see § 11.03(a)(7)-(9). The 1983 amendment, with the added term "actual" defining possession,
became the provision at issue in this cause, § 11.03(a)(8).
6.   Uniform Child Custody Jurisdiction Act, Tex. Fam. Code Ann. § 11.52(5) (West 1986).