**Deborah E. DONCER, Appellant,**

v.

**Shelly DICKERSON, Appellee.**

No. 08–00–00298–CV.

Court of Appeals of Texas, El Paso.

May 9, 2002.

Rehearing Overruled Aug. 21, 2002.

Bradley A. Friedman, Dallas, for Appellant.

C. Wesley Jeanes, Richardson, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This case involves a suit affecting the parent-child relationship brought by a stepmother for possessory conservatorship of a six-year-old boy following the death of the child's father. The trial court dismissed the suit for lack of standing. We must decide whether "principal residence" as used in Section 102.003(b) of the Family Code (in computing the time necessary for standing, the court shall consider the child's principal residence during the relevant time) carries the same connotation as "primary residence" as used in Section 153.134(b)(1)(in rendering an order appointing joint managing conservators, the court shall designate the conservator who has the exclusive right to determine the primary residence of the child). *See* Tex. Fam.Code Ann. § 102.003(b)(Vernon Supp. 2002); § 153.134(b)(1)(Vernon 1996). Finding that the phraseology carries different connotations, we reverse and remand.

## FACTUAL SUMMARY

Appellant Deborah Doncer is the widow of Ray Doncer, who died on January 5, 2000. Appellee Shelly Dickerson is Ray's former wife. Pursuant to an agreement, Ray and Dickerson were named joint managing conservators of their son, Mikey, with Dickerson having the right to establish the primary residence of the child within the boundaries of Collin County. Shortly after Ray's death, Dickerson terminated contact between Doncer and Mikey and Doncer filed suit. At a hearing to determine whether Doncer had standing to seek possessory conservatorship, Doncer testified that pursuant to the joint conser-

vatorship, she and Ray had possession of Mikey 51 percent of the time in even-numbered years and nearly 48 percent in odd-numbered years. Doncer had lived with Ray for over three years at the time of his death and the approximately 50–50 custody arrangement had basically been the same for this three-year period. Doncer explained that her relationship with Mikey was like a parent-child relationship and that her daughter, Mikey's half-sister, was important to Mikey. Doncer volunteered for school activities and was active in Mikey's sporting events.

Dickerson argued that Mikey's primary residence was with her and that Doncer lacked standing because Mikey never resided in her home for a period of six consecutive months. The trial court entered the following findings of fact:

- pursuant to the joint conservatorship, Mikey resided with Ray and Doncer for nearly, but less than, half the time;

- the joint conservatorship had been in effect for approximately a year and a half at the time of Ray's death;

- Ray and Doncer had a child with whom Mikey had a brother-sister relationship;

- Dickerson stopped all contact between Mikey and Doncer shortly after Ray's death;

- Mikey's principal residence was with Dickerson; [1]

- Doncer never had actual care, control, and possession of the child for a period of six months; and

- Doncer never resided with the child for a period of six months.

The trial court concluded that Doncer lacked standing and dismissed the suit. This appeal follows.

## TERMS OF THE JOINT MANAGING CONSERVATORSHIP

Dickerson and Ray Doncer entered into an agreed order following a hearing on July 31, 1998. By its terms, Ray had possession of Mikey every other Friday from 11 a.m. until the following Wednesday at 9 a.m., beginning Friday, August 7, 1998.[2] He also had possession on alternate Tuesdays beginning Tuesday, August 18, 1998. During even-numbered years, he was entitled to the first half of the Christmas school vacation, spring break, and fall vacation. In odd-numbered years, he had the second half of Christmas vacation and the Thanksgiving holidays. He was granted summer access during the entire month of June, subject only to one weekend during which Dickerson would be able to visit Mikey. Likewise, although Dickerson had possession for the month of July, Ray received one weekend with the child. Mikey spent Mother's Day with Dickerson and Father's Day with Ray. The parent not having possession on Mikey's birthday [August 30th] was granted possession from 6 p.m. to 8 p.m. that evening.

The agreed order was in effect for roughly seventeen months before Ray's death. Plotting the possession exchanges on the calendar, and giving Doncer credit for days in which Mikey spent a portion of his time with his father, there were seven

---

1. The trial court defined "principal residence" as "primary residence:"
 Well, let me say. It really is apparent to me that Mr. Doncer and Ms. Doncer were— well, Mr. Doncer was a joint managing conservator; primary conservatorship—primary custody, primary residence was with the now Ms. Dickerson, and that I frankly think that the statute is—it's clear. It's clear to me that Ms. Doncer is not a person addressed by subparagraph (11).

2. The agreed order was reduced to writing and signed by the trial court and the parties on October 6, 1998.

months during which Mikey spent more than 50 percent of his time with the Doncers, the last of which was November 1999, well within the ninety day period before Doncer brought suit on January 19, 2000. With the exception of March 1999 [Dickerson's spring break] and July 1999 [Dickerson's summer vacation] Mikey never spent less than fourteen days each month with his father. Over the intended course of a two-year visitation cycle, the Doncers had Mikey with them more than 50 percent of the time in even-numbered years and 47 percent or 48 percent in odd-numbered years. Suffice it to say that broadly speaking, the Doncers had possession of Mikey half the time.

## STANDARD OF REVIEW

 Standing is implicit in the concept of subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex.1993). Standing presents a question of law. *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex.App.—Fort Worth 2001, no pet.h.). The standard of review of an order of dismissal for lack of standing is the same as that for an order of dismissal for lack of subject matter jurisdiction. *Texas Ass'n of Business*, 852 S.W.2d at 446. We "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Id.*, quoting *Huston v. Federal Deposit Insurance Corporation*, 663 S.W.2d 126, 129 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). When considering a plea to the jurisdiction, the trial court should look solely at the pleadings and must take all allegations in the pleadings as true. *Washington v. Fort Bend Independent School District*, 892 S.W.2d 156, 159 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Consequently, we review the issue *de novo*.

## A CHILD'S BEST INTERESTS

 The best interest of the child is always the primary consideration of the court in determining issues of conservatorship and possession of or access to a child. *See* Tex.Fam.Code Ann. § 153.002. It is presumed to be in a child's best interest for his parents to be appointed joint managing conservators. *See* Tex.Fam.Code Ann. § 153.131(b). It is the public policy of this state to assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, and to encourage parents to share in the rights and duties of raising their children after the parents have separated or dissolved their marriage. *See* Tex.Fam.Code Ann. § 153.001. The trial court here indicated his concern for Mikey's best interest at the outset:

> I can't imagine why it would be in the best interest of the child to have the contact cut off. So ... if there's good cause shown by the mother why it should be cut off, I certainly would be interested in that; but, otherwise, I can't imagine why there would just be a—an arbitrary cutting off of that relationship. Obviously, we'll have to be guided by the statute and the case law, the Code and the case law, but as a general proposition, if there was a stepparent who was married to the father and the father had normal possession, normal visitation—I mean, I can't imagine why it would be a good thing just to terminate the relationship. So to the extent that there is wiggle room for [Doncer] here to seek some continued relationship, I'd be inclined to grant it. You know, all things being equal.

He later commented if the court of appeals "wants my recommendation on the matter, I'd say I recommend that [Doncer] be treated the same as the mother's hus-

band." On these facts, and for the reasons that follow, we wholeheartedly agree.

## DEVELOPMENT OF THE "STANDING" STATUTE

Pertinent to this appeal, the Texas Family Code provides:

**§ 102.003. General Standing to File Suit**

(a) An original suit may be filed at any time by:

. . .

(9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition;

. . .

(11) a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months ending not more than 90 days preceding the date of the filing of the petition if the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition;

(12) a person who is the foster parent of a child placed by the Department of Protective and Regulatory Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition;

. . .

(b) In computing the time necessary for standing under Subsections (a)(9),(11), and (12), the court may not require that the time be continuous and uninterrupted but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit.

Tex.Fam.Code Ann. § 102.003(a). This section derives from former Section 11.03, which originally provided that a suit affecting the parent-child relationship could be brought by any person with an interest in the child, including the child—through a representative authorized by the court—and any agency. *See* Acts 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1413. In 1983, the following was added:

> A person has an interest in a child if the person has had possession and control of the child for at least six months immediately preceding the filing of the petition or is named in [former] Section 11.09(a) of this code as being entitled to service by citation.

*See* Acts 1983, 68th Leg., R.S., ch. 424, § 3, 1983 Tex.Gen.Laws 2353. Commentary in that year's legislative issue of the State Bar of Texas Family Law Section Reports authored by Professor John J. Sampson is instructive: [3]

> STANDING IN SAPCR'S [4] GRANTED TO FOSTER PARENTS AND OTHER

3. Indeed, in considering the proper interpretation of the statute, the trial court referenced Professor Sampson and commented, "[i]f the truth be told, probably Professor Sampson is the one that ended up drafting this." For the benefit of the reader, Professor John J. Sampson is the William Benjamin Wynne Professor of Law at the University of Texas School of Law, where he has taught since 1970. He has served as an academic and legislative advisor to the Family Law Section of the State Bar of Texas since 1975 and as the editor of the State Bar Family Law Section Report since 1976. Together with Harry Tindall of Houston, he has authored an annotated Texas Family Code since 1991. Instrumental in drafting legislation and amendments to the Family Code, Professor Sampson received the 1996 Dan R. Price Award, presented by the Family Law Section to recognize the individual who has made the most significant contribution to the family law bar during a particular year.

4. "SAPCR" is the acronym for "suit affecting the parent-child relationship."

PERSONS WHO HAVE HAD ACTUAL CUSTODY OF A CHILD FOR SIX MONTHS OR MORE.

In *Pratt v. Texas Dept. of Human Resources,* 614 S.W.2d 490 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.), a grandparent was denied standing to bring an action for custody on the basis that the would-be party was not listed as a 'person entitled to service of citation' under [former] § 11.09. This amendment to the 'standing' statute was written with *Pratt* in mind. It establishes a reasonable minimum time after which a person supplying care and having actual custody of a child is deemed to have worked his or her way into standing to file, or to intervene in, a SAPCR. Before the statute could be passed, however, the *Pratt* court retreated from its earlier position. A grandmother with actual custody of a child for over a year was found to have standing to seek conservatorship, *see In the Interest of J.W.,* 645 S.W.2d 340 (Tex.App.—Amarillo 1982). Under a less complex set of facts, another court of appeals also distinguished *Pratt* and determined that the grandparents had standing to intervene in a divorce to seek managing conservatorship because they had maintained actual custody of a child for two years, *see Herod v. Davidson,* 650 S.W.2d 501 (Tex.App.—Houston [14th Dist.] 1983).[5] With enactment of this amendment, the legislature has determined that a person having had actual custody of a child for the 'magic period' of six months should be presumed to have 'an interest in the child.'

John J. Sampson, Vol. 83–2 STATE BAR OF TEXAS SECTION REPORT—FAMILY LAW 11 (1983).

In 1985, the statute was amended again, this time to add a laundry list of persons who had standing. Former Section 11.03(a)(8) provided:

### § 11.03 Who May bring Suit

(a) An original suit affecting the parent-child relationship may be brought at any time by:

. . .

(8) a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition; or

Professor Sampson's commentary in the 1985 legislative issue of the Section Reports is extensive. However, he noted:

The laundry-list primarily incorporates those persons enumerated as entitled to service of citation under [former] section 11.09, but there are some differences. For example, the 1983 amendment was clarified to cover any person who has had *'actual* possession' and control of the child for at least six months preceding the filing of the petition. But for better or worse, a few questions remain unanswered; otherwise litigation wouldn't be so much fun. It is unclear whether a surviving step-parent would qualify as a person who has had 'actual possession' after the custodial parent has died. I think so, because exclusive control is not a stated requirement. A contrary opinion does not seem unreasonable, however. [Emphasis in original].

John J. Sampson, Vol. 85–2 STATE BAR OF TEXAS SECTION REPORT—FAMILY LAW 13 (1985).

In 1992, the San Antonio court of appeals issued its opinion in *T.W.E. v. K.M.E.,* 828 S.W.2d 806 (Tex.App.—San

5. This opinion was later published at 650 S.W.2d 501 (Tex.App.—Houston [14th Dist.] 1983, no writ).

Antonio 1992, no writ). There, the parties were married for ten years and became embroiled in a custody dispute over their six-year-old child. Blood tests ultimately revealed that the husband was not the biological father of the child. The trial court concluded that he had no standing to seek appointment as the managing conservator. The appellate court reversed, holding that his six months' possession of the child before suit was filed gave him standing under former Section 11.03(a)(8).

In 1993, Subsection (10) was added to provide that an original suit may be brought at any time by "a person with whom the child and the child's guardian, managing conservator, or parent have resided for at least six months immediately preceding the filing of the petition and the child's guardian, managing conservator, or parent is deceased at the time of the filing of the petition." The legislative issue of the Section Reports contains the following commentary:

> The amendment to subsection (a)(10) is primarily designed to give standing to a stepparent who assisted in raising a child in the event that the child's parent dies. Note, however, that the statutory language is not limited merely to stepparents; literally it can also include an unmarried cohabitant or even an adult sibling of the child of a deceased parent. It should always be borne in mind that standing to sue does not mean a right to win, but merely a right to be heard in court. Therefore, those who claim standing under this new subsection still will most often be faced with overcoming the parental presumption in a contest for managing conservatorship with the surviving parent. On the other hand, if possessory conservatorship is sought, this grant of standing is clearly the first step toward maintaining contact with the child.

John J. Sampson, Vol. 93–2 State Bar of Texas Section Report—Family Law 14 (1993).

In May 1993, the Austin court of appeals issued its opinion in *Williams v. Anderson*, 850 S.W.2d 281 (Tex.App.—Austin 1993, writ denied). There, the child was born out of wedlock from a relationship between Williams and a man who happened to be Anderson's roommate. At one point, Williams asked Anderson if the child could live with him while she attended school in Houston. The child lived with Anderson between March and December, except for five or six weeks when the boy stayed with Williams. When Williams retrieved her son, Anderson filed suit for access. The trial court appointed him a possessory conservator and Williams appealed. In reversing the access award, the court noted:

> To satisfy the statutory requirement of six calendar months, Anderson must perforce resort to an *interpretation* of section 11.03(a)(8). He must argue for a judicial construction of the statute which holds one of two things: (1) that [former] section 11.03(a)(8) includes, by implication, a theory of *constructive* possession and control, so that Anderson may be said to have had 'possession and control' of the child, *in legal contemplation*, notwithstanding that the child *in fact* lived in Houston with his mother (who possessed all legal rights regarding the child) during the five or six weeks in August and September 1989; or (2) that the statute includes, by implication, a theory of *cumulative* months so that a total of six calendar months of 'possession and control,' accumulated over an unspecified period of time, will satisfy the statute even if, as here, there was no period of six *consecutive* calendar months.
>
> . . .

Concerning the theory of *constructive* possession and control, we believe section 11.03(a)(8) explicitly rejects the theory by the statutory requirement of '*actual* possession and control.' [Emphasis in original].

850 S.W.2d at 284.[6] By way of footnote, the Supreme Court commented in a 1994 decision:

As 'a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition,' a stepparent, or a disestablished presumed father, now has standing to sue under [former] Section 11.03(a)(8).

*In the Interest of J.W.T.*, 872 S.W.2d 189, 194 at n. 16 (Tex.1994).

In the 1995 recodification, the statutory numbering system was changed. Former Section 11.03 became Section 102.003; Subsection (8) became Subsection (9) and Subsection (10) became Subsection (11). *See* Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Gen.Laws 125, eff. April 20, 1995; amended by Acts 1995, 74th Leg., R.S., ch. 751, § 8, 1995 Tex.Gen.Laws 3890–91, eff. Sept. 1, 1995. In 1997, another addition was made to the laundry list:

§ 102.003. **General Standing to File Suit**

An original suit may be filed at any time by:

. . .

(12) a person who is the foster parent of a child placed by the Department of Protective and Regulatory Services in the person's home for a period of not less than 18 months preceding the date of the filing of the petition.

Acts 1997, 75th Leg., R.S., ch. 575, § 3, 1997 Tex.Gen.Laws 2012–13, eff. Sept. 1, 1997. Sampson's commentary fills in the blanks:

For years controversy has raged over the standing of foster parents to seek an independent remedy apart from that sought by DPRS when a child has lived in the foster parents' home for a considerable period of time. The legislature attempted to resolve the controversy by providing that if a child has resided in a foster home for 18 months, the foster parents have standing to seek general relief in a SAPCR. In fact, this may narrow the standing for some foster parents; they probably no longer can claim under Subdivision (9) that they have had 'actual care, control and possession of the child for not less than six months.' The general rule of construction is that the specific controls over the general.

John J. Sampson, Vol. 97–3 State Bar of Texas Section Report—Family Law 21 (1997). Then in 1999, another change was made to Subsection (9) to accord standing to "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." Acts 1999, 76th Leg., R.S., ch. 1390, § 2, 1999 Tex.Gen.Laws 4696, eff. Sept. 1, 1999. Section 102.003(b) was added at the same time. *Id.* Again, we look to Sampson's comments in the legislative issue of the Section Reports:

For years controversy has raged over the standing of foster parents to seek an independent remedy apart from that sought by DPRS when a child has lived in the foster parents' home for a considerable period of time. In 1997 the legis-

---

**6.** Dickerson relied heavily upon the *Williams* decision in her arguments to the trial court. Because it predates the 1999 amendment to Section 102.003 which added Subsection (b), it is of little value to our analysis other than through historical reference.

lature attempted to resolve the controversy by providing that if a child has resided in a foster home for 18 months, the foster parents have standing to seek general relief in a SAPCR. The question of whether this narrowed the standing for foster parents by eliminating their claim under Subdivision (a)(9) was not resolved until 1999. Then the legislature limited application of the 'actual care, control and possession of a child' grounds for standing to a person 'other than a foster parent.' Foster parents continue to have their own provision; the amendment to Subsection (a)(12) reduces the time for foster parents to acquire standing to sue based on their actual custody of the child from 18 months to 12 months.

John J. Sampson, Vol. 99–3 State Bar of Texas Section Report—Family Law 29 (1999). Such is the statutory predicate for this appeal.

## PRINCIPLES OF STATUTORY CONSTRUCTION

■ The Code Construction Act requires a presumption that a statute was enacted in compliance with both the United States and Texas Constitutions, that the entire statute is intended to be effective, and that a just and reasonable result is intended. Tex.Gov't Code Ann. § 311.021 (Vernon 1998). The Supreme Court has emphasized that our objective when construing a statute is to determine and give effect to the Legislature's intent. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999). To ascertain legislative intent, we look first to the statute's plain language. *Id.* We must review the terms of the statute in context. *Id.* Further, in construing a statute, we may consider the object sought to be attained, the circumstances under which the statute was enacted, the legislative history, common law or former statutory provisions, and the conse-

quences of a particular construction. Tex. Gov't Code Ann. § 311.023. Finally, we presume that the Legislature acted with knowledge of the common law and court decisions. *Phillips*, 995 S.W.2d at 658.

## SO WHAT DOES IT MEAN?

■ We agree with Professor Sampson that Subsection 102.003(a)(11) was designed as a "stepparent" statute, affording standing to, among others, a stepparent who helps raise a child when the stepparent's spouse—one of the child's parents—dies. A traditional application would indicate that upon the death of the mother, as a sole managing conservator of the child, her current husband would have standing. In her first issue for review, Doncer contends this section should apply equally to the surviving spouse of the parent who, as a joint managing conservator of the child, does not have *de jure* primary possession but has *de facto* possession for approximately 50 percent of the time.

As we have noted, the cases that have interpreted the six-month time span have done so in connection with Subsection 102.003(a)(9). *T.W.E. v. K.M.E.*, 828 S.W.2d 806 (Tex.App.—San Antonio 1992, no writ)(petitioner was child's presumed father who resided with child for six years); *Williams v. Anderson*, 850 S.W.2d 281 (Tex.App.—Austin 1993, writ denied)(petitioner was family friend who cared for child); *see also In the Interest of Garcia*, 944 S.W.2d 725 (Tex.App.—Amarillo 1997, no writ)(petitioners were child's baby-sitters). Texas courts struggled with the consecutive nature of the time span until the Legislature addressed the problem in 1999 by enacting Section 102.003(b), which we reiterate:

(b) In computing the time necessary for standing under Subsections (a)(9), (11), and (12), the court may not require that the time be continuous and uninterrupt-

ed but shall consider the child's principal residence during the relevant time preceding the date of commencement of the suit.

*See* TEX.FAM.CODE ANN. § 102.003(b). Doncer contends this provision is meant to be used offensively by a person seeking standing, not defensively by someone attacking standing. She argues the phrase "principal residence" is a general provision meant to be used by a parent or other care giver against a person with whom a child temporarily or occasionally resided, not as between parents or joint managing conservators with whom a child shares his time. She submits that had the Legislature intended otherwise, it would have included the phrase it has always used to define such joint managing conservator: the one having the right to determine the "primary residence" of the child. *See* TEX.FAM.CODE ANN. §§ 153.133(a)(1); 153.134(b)(1). This is particularly true since Subsection 102.003(b) applies to a variety of circumstances—third-party caretakers and foster parents as well as stepparents.

If a child's primary residence as defined by a joint managing conservatorship were dispositive of standing, persons exercising actual care, control and possession of the child under Subsection (a)(9) and foster parents under Subsection (a)(12) might qualify in terms of duration of possession but would never qualify as the child's principal residence in a suit against the primary joint managing conservator parent. "Principal residence" must mean something more. The Legislature has used the phrase three times in the Family Code. Two of these relate to jurisdictional issues; one relates to venue. Chapter 155 addresses continuing, exclusive jurisdiction in suits affecting the parent-child relationship. Subchapter C involves intrastate transfers. Pursuant to Section 155.201, transfer of a suit to modify or a motion to enforce an order from the court of continu-

ing, exclusive jurisdiction is mandatory if the child has resided in another county for six months or longer. TEX.FAM.CODE ANN. § 155.201 (Vernon Pamph.2002). Section 155.203 contains the magic language "principal residence":

> § 155.203. Determining County of Child's Residence
>
> In computing the time during which the child has resided in a county, the court may not require that the period of residence be continuous and uninterrupted but shall look to the *child's principal residence* during the six-month period preceding the commencement of the suit. [Emphasis added].

TEX.FAM.CODE ANN. § 155.203 (Vernon 1996). This language is remarkably similar to the standing statute in issue. The same language appears in Section 155.003, relating to the exercise of continuing, exclusive jurisdiction in a modification proceeding:

> § 155.003. Exercise of Continuing, Exclusive Jurisdiction
>
> . . .
>
> (c) A court of this state may not exercise its continuing, exclusive jurisdiction to modify possessory conservatorship or possession of or access to a child if:
>
> > (1) the child's home state is other than this state and all parties have established and continue to maintain their *principal residence* outside this state . . . . [Emphasis added].

TEX.FAM.CODE ANN. § 155.003(c)(1). We also look to legislative references concerning a determination of where a child "resides":

> § 103.001. Venue for Original Suit
>
> (a) Except as otherwise provided by this title, an original suit shall be filed in the county where the child resides . . .
>
> . . .

(c) A child resides in the county where the child's parents reside or the child's parent resides, if only one parent is living, except that:

(1) if a guardian of the person has been appointed by order of a county or probate court and a managing conservator has not been appointed, the child resides in the county where the guardian of the person resides;

(2) if the parents of the child do not reside in the same county and if a managing conservator, custodian, or guardian of the person has not been appointed, the child resides in the county where the parent having actual care, control, and possession of the child resides;

(3) if the child is in the care and control of an adult other than a parent and a managing conservator, custodian, or guardian of the person has not been appointed, the child resides where the adult having actual care, control, and possession of the child resides;

(4) if the child is in the actual care, control, and possession of an adult other than a parent and the whereabouts of the parent and the guardian of the person is unknown, the child resides where the adult having actual possession, care, and control of the child resides;

(5) if the person whose residence would otherwise determine venue has left the child in the care and control of the adult, the child resides where that adult resides;

(6) if a guardian or custodian of the child has been appointed by order of a court of another state or country, the child resides in the county where the guardian or custodian resides if that person resides in this state; or

(7) if it appears that the child is not under the actual care, control, and possession of an adult, the child resides where the child is found.

TEX.FAM.CODE ANN. § 103.001(c). This statute is significant not only because it attempts to define a child's residence but also because it references "actual care, control, and possession." That phrase is used in Section 102.003(a)(9). Subsection (a)(11) refers to a person with whom the child and the child's managing conservator "have resided." It thus appears to us that the Legislature's usage of "principal residence" was deliberate. Had it intended to rely on the premise that a child's "residence" for standing purposes should equate to "primary residence," it would have used the phrase, since it did so in eleven sections of the Code.[7]

---

**7.** *See* TEX.FAM.CODE ANN. § 105.002(c)(1)(D) (party entitled to jury verdict on primary residence); § 153.004(b)(rebuttable presumption that appointment of parent with history of domestic violence as conservator with exclusive right to determine primary residence of the child is not in child's best interest); § 153.132(1)(sole managing conservator has exclusive right to establish the primary residence of the child); § 153.133(a)(1)(an agreement for joint managing conservatorship must designate the conservator having the exclusive right to establish the primary residence of the child); § 153.134(b)(1)(court-ordered joint managing conservatorship shall designate the conservator with exclusive right to determine the primary residence of the child); § 153.312(a)(provisions of standard possession order if possessory conservator resides 100 miles or less from the primary residence of the child); § 153.371(10)(right of nonparent appointed as sole managing conservator to establish the primary residence of the child); § 156.006(b)(limited prohibition against entry of temporary orders pending modification which have the effect of changing the designation of the person having the exclusive right to determine the primary residence of the child); § 156.101(3)(court may modify an order or decree providing for the appointment of a conservator of a child, providing the terms and conditions of conserva-

"Primary residence" as used throughout the Family Code is necessary for two reasons. When a child is spending time in the households of both parents—and in many cases, the time may be divided evenly between the two households—one parent must have the ability to determine residency for purposes of public school enrollment if the parents reside in different districts. And given the heightened mobility of modern society, the right to establish the primary residence of the child factors significantly in the power of relocation. A parent given unfettered discretion to establish the primary residence of the child can move away from the other parent without court approval. Frequently, a parent is authorized to determine the primary residence of the child within a designated geographical area. Here, Dickerson was given the right to determine the primary residence of Mikey, but only within the confines of Collin County.

 In determining the elements of residency, we also look for guidance to case law. See *In the Interest of S.D. and K.D.*, 980 S.W.2d 758, 760 (Tex.App.—San Antonio 1998, pet. denied). The Supreme Court has articulated the elements of residency under the general civil venue statute: (1) a fixed place of abode within the possession of the party; (2) occupied or intended to be occupied consistently over a substantial period of time; (3) which is permanent rather than temporary. *Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136,

140 (1951). An element of permanency is necessary before a party can be considered a resident of a particular county. *In re S.D.*, 980 S.W.2d at 760–61. For example, in a modification case, "permanency may be shown either by presence in the county for an extended period of time or by some agreement, explicit or implied, by the party with a right to control the child's residence, for the child to stay in the new county for an extended period of time." *In re S.D.*, 980 S.W.2d at 761, *quoting Martinez v. Flores*, 820 S.W.2d 937, 940 (Tex.App.—Corpus Christi 1991, no writ).

## CALCULATING DONCER'S POSSESSION

 For purposes of our review, we have studied the court order and reviewed Doncer's testimony.[8] Over the course of a two-year visitation cycle, Mikey spent approximately half of his time in each household. If we focus only on one particular year, the overall picture is distorted. For example, Dickerson focuses on calendar year 1999—immediately preceding Ray's death in January 2000—which, as an odd-numbered year, accorded her possession of the child slightly in excess of half the time. Yet during even-numbered years, she had possession of Mikey less than half the time. Does this mean Mikey's stepfather would have no standing if Dickerson were to die in early 2003? A determination of standing based upon the timing of a par-

---

torship or providing for the possession of or access to a child if the conservator having the exclusive right to establish the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months); § 156.102 (requirements for modification of exclusive right to determine primary residence of child within one year of order); § 156.409(a)(change in physical possession of

child authorizes modification of recipient of child support).

8. Dickerson complains in her brief that she was prepared to present testimony to controvert Doncer's statements but that the trial court ruled before she had the opportunity to call any witnesses. However, the record does not indicate that she objected, asked for an opportunity to present testimony, or offered a bill of exceptions.

ent's death leads to an illogical and unreasonable result.

■ The statute calculates standing by requiring Doncer to demonstrate that she lived with Mikey and Ray for at least six months ending not more than ninety days before she filed suit. The six months' possession need not be continuous and uninterrupted and the court shall[9] consider the child's principal residence during that time frame. Doncer filed suit on January 19, 2000. Based upon the record before us, Doncer has established that there were at least six months between August 1, 1998 and January 19, 2000 when Mikey's principal residence was the Doncer home: (1) a fixed place of abode; (2) occupied consistently over a substantial period of time; (3) which is permanent rather than temporary. By virtue of the joint managing conservatorship agreement, Dickerson and Ray Doncer intended Mikey to occupy the Doncer home *consistently*, over a *substantial* period time, at least until he attained majority. It was not intended to be a temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care. We do not paint with so broad a brush as to suggest that in every joint managing conservatorship, the standing requirements can be met by sheer virtue of the standard possession order. In the absence of legislative clarification, these cases will necessarily be fact specific and resolved on an *ad hoc* basis.

## CONCLUSION

Section 102.003(a)(11) applies to a spouse of a deceased joint managing conservator where, as here, the child spent half his time with the stepparent over the intended course of a two-year visitation cycle. Because Doncer has standing to bring suit, we sustain Issue One. We need not address the remainder of the issues presented for our review. ·

We recognize that during the pendency of this cause, the United States Supreme Court issued its opinion in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). As the trial court has not addressed whether *Troxel* impacts Doncer's suit,[10] we do not consider it here. Neither the Texas Constitution nor our State Legislature has vested this court with the authority to render advisory opinions. TEX.CONST. art. II, § 1; *Speer v. Presbyterian Children's Home and Service Agency*, 847 S.W.2d 227, 229 (Tex. 1993); *In re Salgado*, 53 S.W.3d 752, 757 (Tex.App.—El Paso 2001, orig. proceeding).

The judgment of the trial court is reversed and remanded.

---

**9.** We pause to note that the digest of the House bill analysis does not speak in mandatory terms: "These time periods would not have to be continuous and uninterrupted, and a court *could* consider the child's principal residence during the relevant time frame." [Emphasis added]. *See* House Research Organization Bill Analysis, HB 1622, *Daily Floor Report*, April 15, 1999.

**10.** In *Troxel,* the court concluded that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Troxel,* 530 U.S. at 73, 120 S.Ct. at 2064. The trial court here clearly understood that *Troxel* was pending and may become relevant when he noted, "[b]ut, of course, [the] United States Supreme Court is going to weigh in on this matter with respect to grandparents anyway."