COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO. 2-08-323-CV

 

 

IN RE KATHERINE KELSO[1]

                                                  ------------

 

                                       ORIGINAL PROCEEDING

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------








Relator
Katherine Kelso has filed a petition for writ of mandamus asking this court to
vacate the trial court=s temporary orders (1) making
her child=s paternal grandparents, Rachel
and Kurt Connor, joint managing conservators of the child along with her and
(2) restricting the child=s residence to Hood County.  Because the evidence presented at the
temporary orders hearing fails to show that the Connors had actual care,
control, and possession of the child for six consecutive months ending not more
than ninety days before filing their petition, we hold that Katherine is
entitled to relief; thus, we conditionally grant the writ.  See Tex. Fam. Code Ann. '
102.003(a)(9) (Vernon Supp. 2008).

Background
Facts

On
February 29, 2008, the Connors filed an Original Petition in Suit Affecting the
Parent-Child Relationship (SAPCR), seeking to be named sole managing
conservators of Katherine=s child Richard.  The Connors are Richard=s
paternal grandmother and step-grandfather; Katherine is not married to Richard=s
father.[2]  The Connors pled that A[t]here
are no court-ordered conservatorships, court-ordered guardianships, or other
court-ordered relationships affecting the child [who is] the subject of this
suit.@[3]  They also pled that they had standing to
bring the suit because Katherine had voluntarily relinquished Richard to them
and because they had had Aactual care, control and
possession@ of Richard for at least six
months, ending no more than ninety days preceding the filing of the petition. 








On March
12, 2008, Katherine filed a Motion for Change of Venue, in which she contended
that Richard=s residence is in Nueces County,
where he has lived since he was born in March 2006.  She also alleged that Richard Ahas
never resided in Hood County, Texas as interpreted by the Family Code@ and
requested that the trial court order the Connors to Ahand the
child over to his mother forthwith.@ 








 The trial court held a hearing on temporary
orders on March 13, 2008.  At the
hearing, Rachel testified that she had had actual care, custody, and control of
Richard for the past six months although she admitted that he had spent time
with Katherine in Corpus Christi over the past year.  According to Rachel, Richard began living
with the Connors permanently in March 2007. 
Specifically, she said that Richard spent Easter 2007 with them and was Athere
often@ around
that time.  She also testified that
Richard lived with her and her husband Aduring
the summer, Fourth of July, [and] the major holidays and events throughout the
summer,@ as well
as when school began.  Rachel agreed that
Richard was living and residing in her home A[a]ll
during football season@ of 2007, for Thanksgiving and
around Christmas time, and from January to the date of the hearing.  However, she also admitted that Richard had
been with Katherine at Thanksgiving for a week to two weeks; she agreed with
her counsel that these visits were Ashort
stays away from home.@ 
Richard returned to the Connors for the Christmas holidays but only
because Rachel agreed to take his older brother too.  Richard and his brother left the Connors= the day
after Christmas, but Richard returned sometime in January 2008. 

Rachel
admitted that Richard was supposed to go back to Katherine on March 9,
2008.  However, according to Rachel,
Katherine called her on March 6Ca week
after the suit was filedCdemanding that he be returned to
her immediately.  Rachel was upset
because she had planned a party for Richard that weekend; she refused to let
Katherine have him back after that.  

Rachel
testified that when Richard stayed with her and Kurt, Katherine did not provide
any support or money, nor did she provide for any clothing, medical care, or
other of Richard=s needs.  Rachel also said that Richard stayed in
full-time daycare while staying with the Connors, which they paid for from $400
a month child support from Richard=s father.  

Rachel
also testified that when Richard stayed with Katherine, he either went to
daycare or stayed with a babysitter most of the time and that he stayed
overnight with the babysitter more than with Katherine.  Katherine corroborated this testimony, as did
the babysitter, Tina Martin.  Katherine
and Tina both testified that Katherine works a lot; according to Katherine, she
works up to six nights a week.








Tina
testified that in her opinion, Richard=s home
for the past six months had been with the Connors and that he had not spent any
substantial amount of time in Katherine=s
care.  Tina considered the stays with
Katherine in Corpus Christi over the past year to be temporary.  However, Tina also corroborated daycare
records admitted by Katherine showing that Richard attended daycare in Nueces
County during the school weeks in December and the first week of January.[4]

Katherine
testified that she Anever let [Richard] live@ in Hood
County.  According to Katherine, she let
Richard visit the Connors A[w]hen
he first met them,@ Thanksgiving, Christmas, and
then beginning in January 2008, when she had Asome
family issue [came] up@ and asked Rachel Aif she
would help out by taking [Richard] until it was over.@  Katherine said that the longest period of
time Richard had spent in Hood County was about a month and a half, Amaybe,
almost two,@ around Easter 2007, a couple of
weeks at Thanksgiving, one week at Christmas, and then from the end of January
2008 until the hearing.  Additionally,
Katherine and Tina both testified that Richard has a doctor that he sees in
Nueces County; Tina agreed that Katherine had taken Richard to that doctor six
times in 2007Cin February, March, May, August,
and SeptemberCand on January 17, 2008.  








At the
conclusion of the hearing, the trial court entered temporary orders appointing
the Connors joint managing conservators of Richard along with Katherine; giving
the Connors the right to have the primary custody of Richard and to establish
Richard=s
domicile, which the trial court restricted to Hood County; granting Katherine
visitation on the third weekend of each month; and ordering Katherine to pay
$192.85 per month to the Connors in child support.

Katherine
filed this petition for writ of mandamus along with a motion for emergency
temporary relief, seeking a stay of trial. 
We granted the motion, stayed the trial, and requested a response from
the Connors.  The Connors declined to
file a response.  In her petition for
writ of mandamus, Katherine challenges (1) the trial court=s
determination that the Connors had standing to bring this suit and (2) the
trial court=s determination that it was in
Richard=s best
interest that the Connors be named his temporary joint managing conservators.








Analysis

We review the trial court=s
determination of a party=s standing to file a SAPCR by
construing the pleadings in favor of the petitioner and looking to the pleader=s
intent.  In re M.J.G., 248 S.W.3d
753, 757 (Tex. App.CFort Worth 2008, no pet.); In
re SSJ-J, 153 S.W.3d 132, 134 (Tex. App.CSan
Antonio 2004, no pet.).  We review the
standing issue de novo.  M.J.G.,
248 S.W.3d at 757; SSJ-J, 153 S.W.3d at 134.  Standing is implicit in the concept of
subject-matter jurisdiction,[5]
and the trial court can consider evidence on the standing issue when evidence
is necessary to determine jurisdictional facts.[6]








The Connors=
petition alleged, and the trial court specifically found, standing under
section 102.003(a)(9) of the family code rather than the more specific
grandparent-standing provisions of section 102.004.  See Tex. Fam. Code Ann. '' 102.003(a)(9),
102.004 (Vernon Supp. 2008).  To show
standing under section 102.003(a)(9), the Connors had to prove that they had
had actual care, control, and possession of Richard for at least six months,
ending not more than ninety days before February 29, 2008, the date they filed
their suit.  Id. '
102.003(a)(9).[7]  In computing the time under subsection (9),
the trial court Amay not require that the time be
continuous and uninterrupted but shall consider the child=s principal
residence during the relevant time preceding the date of commencement of the
suit.@  Id. ' 102.003(b).

Courts
should determine a child=s principal residence by looking
at the following factors:  (1) whether
the child has a fixed place of abode within the possession of the party, (2)
occupied or intended to be occupied consistently over a substantial period of
time, and (3) which is permanent rather than temporary.  In re M.P.B., 257 S.W.3d 804, 809
(Tex. App.CDallas 2008, no pet.); Doncer
v. Dickerson, 81 S.W.3d 349, 361 (Tex. App.CEl Paso
2002, no pet.). In a modification case, for example, Apermanency
may be shown either by presence in the county for an extended period of time or
by some agreement, explicit or implied, by the party with a right to control
the child=s residence, for the child to
stay in the new county for an extended period of time.@  Doncer, 81 S.W.3d at 361 (quoting In
re S.D., 980 S.W.2d 758, 761 (Tex. App.CSan
Antonio 1998, pet. denied).








Here,
even considering the evidence in the light most favorable to the Connors, the
evidence does not show that Katherine voluntarily relinquished permanent care,
control, and possession of Richard to the Connors for the six months preceding
their filing of the suit.  By Rachel=s own
admission, Katherine had possession of Richard in November when Rachel called
to ask if she could have him for the holidays; Katherine did not allow
possession until Rachel agreed to take Richard=s
brother too.  Tina testified that Richard
attended daycare during the school week in Nueces County during December 2007
and the first week of January 2008.  And
Katherine testified that she asked Rachel to take Richard at the end of January
on a temporary basis only; Rachel confirmed that Richard was to be returned to
Katherine until Rachel became upset that Katherine wanted him back early.  Thus, Rachel=s own
testimony shows that Katherine controlled where Richard would stay and for how
long and that the Connors did not have such control.  Nor is there any evidence that Katherine
intended Richard to stay with the Connors for any extended periods of
time.  In other words, there is no
evidence that Richard=s abode in Hood County was fixed
or permanent; rather, the evidence is that it was temporary, sometimes up to
several months at a time, but always depending on Katherine=s
consent.  We hold that the Connors did
not meet their burden of proving standing to bring an original suit seeking
managing conservatorship of Richard.








Moreover,
given the nature of this suit and the Connors= lack of
standing to maintain it, we also hold that mandamus is the proper remedy.  See In re Tex. Dep=t of
Prot. & Regulatory Servs., 210 S.W.3d 609, 613 (Tex.
2006) (acknowledging that appeal is frequently inadequate in child custody
cases); In re Roxsane R., 249 S.W.3d 764, 775 (Tex. App.CFort
Worth 2008, orig. proceeding).[8]

Conclusion








Having determined that the Connors did not prove
standing to file suit under family code section 102.003(a)(9), we order the
trial court to vacate its temporary orders signed March 26, 2008.[9]  Moreover, because without standing the trial
court lacks jurisdiction, we also order the trial court to dismiss the Connors= suit.[10]  A writ will issue only if the trial court
fails to comply with this order.

We order
the Connors to deliver Richard to Katherine at the Connors=
residence at 1001 Tolar Cemetery Road, Tolar, Texas 76476, in Hood County at
6:00 p.m. this eveningCor, if Katherine is unable to be
at 1001 Tolar Cemetery Road, Tolar, Texas 76476, in Hood County by that time,
at a time designated by Katherine with at least four hours= notice
to the Connors or their attorney of record by telephone.[11]

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT,
J. dissents without opinion.

DELIVERED:  September 19, 2008











[1]For purposes of
maintaining the confidentiality of this original proceeding, we will refer to
all parties by fictitious names.  See
Tex. R. App. P. 9.8; Tex. Fam. Code Ann. ' 109.002(d) (Vernon 2002).





[2]The Connors named Richard=s father in the suit, but
he filed a waiver of service on March 14, 2008. 
He is currently serving in the United States Navy. 





[3]Katherine testified that
she had filed for child support from Richard=s father in Nueces County but that she did not
pursue the suit based upon a verbal agreement. 
She also testified that there was a court case involved and that blood
testing had occurred.  According to Katherine,
the case was still open; however, other than Katherine=s testimony, there is no
other evidence in the record regarding this suit.  





[4]Although Tina also
testified that Katherine told her the daycare will sometimes sign in Richard
and his brother for her when they are not at school, this testimony was in
reference to daycare records for March 2007, not the December and January
records.  





[5]Alfonso v. Skadden, 251 S.W.3d 52, 55 (Tex.
2008); City of Arlington v. Centerfolds, Inc., 232 S.W.3d 238, 244 (Tex.
App.CFort Worth 2007, pet.
denied).





[6]Bland ISD v. Blue, 34 S.W.3d 547, 555
(Tex. 2000).





[7]Section 102.004 provides
that a grandparent may file an original suit requesting managing
conservatorship if there is satisfactory proof to the trial court that A(1) the order requested
is necessary because the child=s present circumstances would significantly
impair the child=s physical health or
emotional development; or (2) both parents, the surviving parent, or the
managing conservator or custodian either filed the petition or consented to the
suit.@  Tex. Fam. Code Ann. ' 102.004(a) (Vernon Supp.
2008).





[8]See also In re Chambless, 257 S.W.3d 698, 699B700 (Tex. 2008)
(conditionally granting writ of mandamus and ordering trial court to vacate
temporary orders granting grandparents visitation when mother not able to
effectively cross-examine social worker at temporary order hearing); Proffer
v. Yates, 734 S.W.2d 671, 673 (Tex. 1987) (granting mandamus to transfer
venue of child custody case).





[9]Accordingly, Katherine=s obligation to pay child
support to the Connors shall cease immediately. 
Any wage withholding order that may have been issued in accordance with
the trial court=s temporary orders shall
likewise terminate immediately.





[10]Our holding should not be
construed as preventing the trial court from entering any temporary orders that
may be otherwise permissible by law or that may be agreed to by the parties
providing for visitation by the Connors as the trial court may find to be in
Richard=s best interest.  See, e.g., Tex. Fam. Code Ann. '' 109.001, 153.001B.002 (Vernon 2002).





[11]We deny Katherine=s Motion for Emergency
Relief filed September 15, 2008 as moot.