**CITY OF SAN ANTONIO, acting by and through City Public Service Board (CPS Energy), Appellant**

v.

**TOMMY HARRAL CONSTRUCTION, INC., Appellee**

No. 04-16-00223-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: August 24, 2016

---

Melodee Laine Gruber, Jackson Walker LLP, Matthew Vandenberg, San Antonio, TX, for Appellant Attorney.

Micah Williams, Law Office of Mark E. Macias, San Antonio, TX, for Appellee Attorney.

Sitting: Karen Angelini, Justice, Patricia O. Alvarez, Justice, Jason Pulliam, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

When CPS Energy's underground facility was damaged by an excavator, CPS Energy sued the excavator—a general contractor's subcontractor—for negligence and damages. CPS Energy argued the general contractor's excavation notice did not excuse the subcontractor from providing the notice required by section 251.151 of the Utility Code. The trial court disagreed, but it granted permission for an interlocutory appeal.

We hold that a general contractor's pre-excavation notice that meets the Utilities Code's notice requirements is effective notice for its subcontractor, and we affirm the trial court's order.

### BACKGROUND

Appellee Tommy Harral Construction, Inc. was hired by RTM Construction Co., Inc. for an apartment complex project to perform some excavation. During the excavation, Harral damaged some of CPS Energy's underground equipment.

The City of San Antonio, acting by and through the City Public Service Board (CPS Energy), sued Harral for trespass and negligence, and CPS Energy sought damages from Harral. Harral raised several defenses, and CPS Energy moved for summary judgment on its partial declaratory judgment action. In its action, CPS Energy asked the trial court to construe section 251.151 of the Utilities Code, see TEX. UTIL. CODE ANN. § 251.151 (West 2007), and declare that section 251.151(a) requires "the actual entity or person excavating to provide notification prior to a dig," and "pre-excavation notice provided by a general contractor does not relieve a third-party subcontractor who will excavate of its notice obligations under [the statute]."

The trial court construed the statute against CPS Energy's view; the trial court found that "[s]ection 251.151(a) do[es] not

require the actual entity or person excavating to provide notification prior to a dig," and a general contractor's pre-excavation notice "relieves a third-party subcontractor who will excavate of its notice obligations under ... [s]ection 251.151(a)." The trial court denied CPS Energy's motion for partial summary judgment but granted permission to appeal its interlocutory order. *See* Tex. R. Civ. P. 168 (authorizing a trial court to "permit an appeal from an interlocutory order that is not otherwise appealable"). CPS Energy also petitioned this court for permission to appeal. *See* Tex. R. App. P. 28.3 (permissive appeals). We granted CPS Energy's petition, and this appeal ensued.

### Requirements for Notice of Intent To Excavate

This appeal turns on the meaning of a statute. Before examining the statute, we briefly recite the standard of review and the applicable principles of statutory construction.

### A. Standard of Review

We review questions of statutory construction de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex.2014) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008)).

### B. Statutory Construction

"In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall*, 246 S.W.3d at 625; *accord Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex.2007); *see also* Tex. Gov't Code Ann. § 311.023 (West 2013) ("Statute Construction Aids"). We presume the legislature acted with purpose when it included each word and excluded omitted words. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Laidlaw Waste Sys. (Dall.), Inc. v.*

*City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). "If the statutory text is unambiguous, [we] must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results." *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex.2004); *accord City of Rockwall*, 246 S.W.3d at 625–26.

### C. Utilities Code Section 251.151

This permissive appeal centers on the meaning of section 251.151 of the Utilities Code, which reads in its entirety as follows:

(a) Except as provided by Sections 251.155 and 251.156, a person who intends to excavate shall notify a notification center not earlier than the 14th day before the date the excavation is to begin or later than the 48th hour before the time the excavation is to begin, excluding Saturdays, Sundays, and legal holidays.

(b) Notwithstanding Subsection (a), if an excavator makes a Saturday notification, the excavator may begin the excavation the following Tuesday at 11:59 a.m. unless the intervening Monday is a holiday. If the intervening Monday is a holiday, the excavator may begin the excavation the following Wednesday at 11:59 a.m.

(c) To have a representative present during the excavation, the operator shall contact the excavator and advise the excavator of the operator's intent to be present during excavation and confirm the start time of the excavation. If the excavator wants to change the start time, the excavator shall notify the operator to set a mutually agreed-to time to begin the excavation.

Tex. Util. Code Ann. § 251.151.

### D. CPS Energy's Arguments

CPS Energy argues the statute's plain language supports CPS Energy's statutory

construction, and its construction provides the best protections for excavators and underground facility owners.

### 1. Plain Language Arguments

CPS Energy argues section 251.151(a)'s language is plain and unambiguous; it asks that we construe "person" narrowly—to comprise only the legal entity performing the excavation, e.g., a subcontractor, and not to include a separate legal entity, e.g., a general contractor.

To support its argument, CPS Energy notes the term person is not explicitly defined in chapter 251, Underground Facility Damage Prevention and Safety, and it contends that the other definitions of person in the Utilities Code apply only to the title, chapter, or subchapter in which they are used. See TEX. UTIL. CODE ANN. §§ 251.001–.203. CPS Energy insists that because Chapter 251 does not define the term person, the Code Construction Act's definition applies. See TEX. GOV'T CODE ANN. § 311.005. This Act defines person as a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity." Id.

CPS Energy argues that because section 251.151 requires notice by a person, and the Act does not expressly include "agent" or "third-party" in its definition of person, the section does not allow an agent or another party to give notice on behalf of the legal entity performing the excavation. Therefore, in CPS Energy's view, it necessarily follows that section 251.151(a) requires the legal entity performing the excavation to give pre-excavation notice, and notice by another will not suffice.

### 2. Protections for Excavators and Underground Facility Owners

CPS Energy also argues the legislature's intended protections are best met by CPS Energy's view. Its view requires the person—the legal entity—that will excavate to give notice. It argues that such notice identifies the legal entity that will bear the risk of any personal injury or underground facility damage arising from the excavation, those risks will incentivize the excavator to comply with the notification requirements, and excavators and underground facility owners will both benefit.

### E. Harral's Arguments

Harral argues that RTM satisfied section 251.151's notice requirements because RTM was "a person who intend[ed] to excavate," and RTM gave the required notice. See TEX. UTIL. CODE ANN. § 251.151(a). Harral also argues RTM's notice was sufficient for Harral because Harral and RTM were in contractual privity, and because RTM was the principal and Harral was its agent for purposes of excavating the site as specified by RTM's notice.

### F. Analysis

We begin by noting that CPS Energy does not dispute that RTM provided timely notice.

### 1. Timely Notice by RTM

In its brief, CPS Energy states that "[u]pon information and belief, and as alleged by [Harral] in the trial court, an employee of RTM Construction Co., Inc. ... timely provided notification of its intention to excavate." "In a civil case, the court will accept as true the facts stated unless another party contradicts them." TEX. R. APP. P. 38.1(g); accord Western Steel Co. v. Altenburg, 206 S.W.3d 121, 124 (Tex.2006) (per curiam) ("An appellate court normally accepts as true the facts stated in an appellate brief unless the opposing party contradicts them.").

Harral, in its brief, does not contradict CPS Energy's statement; it confirms it.

Thus, for purposes of this appeal, we conclude RTM timely provided notification of intent to excavate.

We turn to the central questions in this appeal: (1) does section 251.151 require the legal entity that will perform the excavation—and no other—to provide notice? and (2) will a general contractor's timely notice of an excavation relieve its subcontractor from providing notice for that excavation?

### 2. Plain Language, Definitions

Section 251.151 requires "a person who intends to excavate" to give notice. *See* TEX. UTIL. CODE ANN. § 251.151. Chapter 251 of the Utility Code does not define person, *see* TEX. UTIL. CODE ANN. § 251.002 ("Definitions"), but we may apply the Code Construction Act to construe section 251.151's provisions, *see id.* § 1.002 ("[The] Code Construction Act ... applies to the construction of each provision in this code except as otherwise expressly provided by this code."). The Code Construction Act defines a person as a "corporation, organization, ... [or] any other legal entity." TEX. GOV'T CODE ANN. § 311.005.

### 3. Presumptions about Legislature

We presume the legislature is familiar with the common practice, as addressed in numerous statutes and court cases,[1] of general contractors hiring subcontractors to perform certain tasks. *See Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968) ("There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience ...." (quoting *Tex. Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939)); *see also Phillips v. Beaber*, 995 S.W.2d 655,

658 (Tex.1999) ("[W]e presume that the Legislature acted with knowledge of the common law and court decisions."). The legislature could have limited "a person who intends to excavate" to "only the legal entity that will actually perform the excavation," but it did not. *See Phillips*, 995 S.W.2d at 658 ("If the Legislature had intended such a limitation, it could have so provided.").

### 4. Construing the Statute

Nothing in the provision's plain language limits "a person who intends to excavate" to the legal entity that will actually perform the excavation. *See* TEX. UTIL. CODE ANN. § 251.151(a). Further, no provision in Chapter 251 indicates the legislature intended (1) to prohibit either a general contractor or a subcontractor from giving notice or (2) to limit the person giving notice to only the legal entity that performs the excavation.

CPS Energy is an operator who has recurring interactions with excavators, and its experience may be valuable to the legislature in creating or revising statutes. But the statute's plain language does not reveal any legislative intent to require the narrow reading CPS Energy suggests, and we decline to impose restrictions that the legislature did not. *See Phillips*, 995 S.W.2d at 658; *see also TGS–NOPEC*, 340 S.W.3d at 439.

### 5. No Indication of Absurd Results

Moreover, we do not conclude that allowing a general contractor to provide notice on behalf of its subcontractor produces an absurd result. *See Mega Child Care*, 145 S.W.3d at 177; *see also City of Rockwall*, 246 S.W.3d at 625–26. General contractors often have overarching control of

---

1. *E.g.,* TEX. LABOR CODE ANN. § 406.121 (West 2015) (" 'Subcontractor' means a person who contracts with a general contractor to perform all or part of the work or services that the general contractor has undertaken to per-

form."); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 441 (Tex.2009); *Briggs v. Toyota Mfg. of Texas*, 337 S.W.3d 275, 283 n. 7 (Tex. App.—San Antonio 2010, no pet.).

the construction site; they may coordinate their subcontractors' access to the site and determine the order and timing of their subcontractors' tasks. *See generally Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex.2002) (addressing, in a tort case, the issue of a general contractor's control over a site). Our role is not to decide whether allowing a general contractor to provide notice of an excavation for its subcontractor is a best practice. *See Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex.2011) ("Our role ... is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." (alteration in original) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003))). Instead, our role is to "determine the Legislature's intent ... from the plain meaning of the words chosen," *see State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006), and give effect to that intent in a manner that avoids absurd results, *see Mega Child Care*, 145 S.W.3d at 177; *see also City of Rockwall*, 246 S.W.3d at 625–26. Acting within our role, we do not conclude that allowing a general contractor to provide notice on behalf of a subcontractor would lead to absurd results. *See Mega Child Care*, 145 S.W.3d at 177; *see also City of Rockwall*, 246 S.W.3d at 625–26.

Having considered the provision in its statutory context, we hold that section 251.151's use of "a person who intends to excavate" includes a general contractor and the general contractor's timely notice that complies with the statutory requirements relieves the subcontractor from providing separate notice for the same excavation. Thus, RTM's notice was sufficient notice of the excavation performed by Harral on the day in question.

CONCLUSION

In this permissive interlocutory appeal pertaining to the Utilities Code's require-ment that an excavator give timely notice of its intent to excavate, CPS Energy argues that section 251.151's phrase "a person who intends to excavate" is limited to the legal entity that actually performs the excavation. Having considered the provision's plain language in its statutory context, we conclude that CPS Energy's narrow reading was not the legislature's intent.

We hold that section 251.151's use of "a person who intends to excavate" includes a general contractor, and the general contractor's timely notice that complies with the statutory requirements relieves the subcontractor from providing separate notice for the same excavation. Thus, RTM's pre-excavation notice relieved Harral Construction of its duty to provide separate or additional notice of the excavation, and the trial court did not err when it denied CPS Energy's motion for summary judgment on its declaratory judgment action.

We affirm the trial court's order and remand this cause to the trial court.